HUGHES, J.
_JjThis case involves a direct appeal from the Civil District Court for the Parish of Orleans, pursuant to LSA-Const. art. V, § 5(D), of a ruling that a city ordinance authorizing the imposition of a penalty and a “collection fee” against delinquent ad valorem taxpayers was unconstitutional, violating LSA-Const. art. VII, § 25(A)(1). For the reasons that follow, we affirm and remand.
FACTS AND PROCEDURAL HISTORY
The plaintiffs in this case, Jimmie Jackson, E. Simms Hardin, and KSD Properties, LLC (“KSD”), untimely paid ad valo-rem taxes to the City of New Orleans (“City”), on their respective Orleans Parish immovable properties, and were assessed penalties, fees, and interest thereon for various tax years between 2003 and 2009. In tendering its payment, KSD followed the payment-under-protest provisions set forth in the Ordinance Number 22207 of the City’s Code of Ordinances (“Code”) for at least one of the disputed tax years, while Mr. Jackson |2and Mr. Hardin did not follow the payment-under-protest provisions.[1]
*880 On May 28, 2009 these plaintiffs filed a class action suit in the district court against the City, seeking a declaration that Ordinance Number 22207, and the collection of any penalties, fees, and interest collected thereunder, violates the statutes and constitution of Louisiana, particularly, LSA-Const. art. VII, § 25(A)(1), and that the application of Ordinance Number 22207 to this case violates U.S. Constitutional guarantees of due process and equal protection, as well as LSA-Const. art. I, §§ 2, 3, 5, 9, 19, and 22. The plaintiffs further sought the return of penalties, fees, and interest paid under the allegedly unconstitutional ordinance, that all past or future payments of penalties, fees, and interest be deemed to have been paid under protest, and that any pending such charges against themselves or any putative class member be stricken.
In response, the City defended the action by asserting a peremptory exception pleading the objections of no cause of action and prescription, based on the plaintiffs’ alleged failure to follow the Code’s payment-under-protest provisions, along with other defenses.
A motion for summary judgment was filed by the plaintiffs, urging the unconstitutionality of Ordinance Number 22207 and citing Fransen v. City of New Orleans, 2008-0076 (La.7/1/08), 988 So.2d 225, as controlling authority.[2] On April 5, 2012 the district court issued rulings on the City’s exceptions and on the plaintiffs’ motion for summary judgment, which: granted the City’s exception of no cause of action as to Mr. Jackson and Mr. Hardin, dismissing these plaintiffs |3(for failing to comply with the city ordinance requiring payment under protest); denied the City’s objections of no cause of action and prescription as to plaintiff KSD; and granted KSD’s motion for summary judgment (upon a finding of unconstitutionality as to Ordinance Number 22207). The district court judge found:
Ordinance No. 22207 ... unconstitutional insofar as the provisions contain any language that permits the City to grant to an outside collector the authorization to collect delinquent ad valorem property taxes on immovables and/or any language authorizing the City to use any method beyond the constitutional limitation of a tax sale to collect such taxes. Further, to the extent that these provisions authorize the levying of penalties for delinquent ad valorem taxes upon immovable property, such is unconstitutional. The State constitution is clear that, upon delinquency for such taxes, a governmental subdivision is permitted only to sell the property for taxes, interest and costs[3]
Both plaintiffs and the City filed motions for new trial. The City’s motion for new trial was granted in part, to dismiss KSD’s claims as to its 2008 tax penalty and fees for failure to state a cause of action and to amend the judgment accordingly (for KSD’s failure to timely assert a protest as to the penalty and fees assessed for that year’s delinquent tax payment); the mo *881 tions for new trial were denied in all other respects. Both the plaintiffs and the City filed appeals from the district court judgment and the plaintiffs filed an answer to the City’s appeal.[4]
On appeal, the City contends the district court erred in granting summary judgment declaring Ordinance Number 22207 unconstitutional because: (1) the authorization of a private entity to aid the City in conducting tax sales for the | collection of delinquent ad valorem taxes is not prohibited by the Louisiana Constitution, and LSA-Const. art. VII, § 14(C) explicitly permits municipalities to engage in public-private cooperative endeavors for the performance of a public purpose;[5] (2) the holding of unconstitutionality regarding the City’s use of “any method beyond the constitutional limitation of a tax sale to collect such taxes” is immaterial since the City only conducts tax sales to collect ad valorem taxes, and no evidence was presented to suggest that the City has utilized any procedure other than a tax sale to collect ad valorem taxes; (8) the sworn affidavit testimony of the City’s finance director established that the ordinance’s nine and one-half percent collection fee captures the costs incurred to satisfy the requirements of Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and Fransen v. City of New Orleans recognized that the City may recover unpaid taxes, interest, and costs through a tax sale; and (4) there are genuine issues of material fact regarding whether the nine and one-half percent collection fee authorized by Ordinance Number 22207 constitutes collection of recoverable costs incurred in conducting a tax sale.
Additionally, the City has filed, in this court, a motion to strike exhibits produced by the plaintiffs during the November 18, 2011 district court hearing of the matters at issue herein. The City contends the exhibits were not properly introduced into evidence and should not have been considered by the district court in rendering judgment in this case. The City’s motion to strike was referred to the merits of this appeal for disposition, and we discuss the motion hereinafter.
The plaintiffs contend in their appeal that the district court erred: (1) in applying LSA-R.S. 47:2134 (prior LSA-R.S. 47:2110) (requiring payment under protest and the filing of suit within thirty days) to their claim of unconstitutionality | «¡because the law at issue was ultimately declared unconstitutional; (2) in failing to follow McKesson Corporation v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), which held that unconstitutionally-collected taxes (herein, penalties and collection fees) must be returned; (3) in failing to find that the City waived the application of, and/or is estopped from enforcing, any payment-under-protest provision because the City *882 utilized an unpublicized discriminatory process to waive the imposition of delinquency penalties and collection fees for select taxpayers; and (4) in failing to find that the City’s utilization of a payment-under-protest procedure was unconstitutional, as applied (on the basis of equal protection and due process considerations), because the City granted waivers to select taxpayers and did not make the waiver process available to the plaintiffs or to the public at large.
LAW AND ANALYSIS

Motion for Summary Judgment

This court applies a de novo standard of review in considering lower court rulings on summary judgment motions. Thus, we use the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law, pursuant to LSA-C.C.P. art. 966(B). See Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC, 2012-2504 (La.10/15/18), 124 So.3d 1065,1071.
A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on 16that issue and summary judgment is appropriate. Smitko v. Gulf South Shrimp, Inc., 2011-2566 (La.7/2/12), 94 So.3d 750, 755.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 2003-1488 (La.4/23/04), 874 So.2d 131, 137. Therefore, our decision is premised in part on the proper interpretation of the tax law at issue. Such considerations are questions of law and are also reviewed by this court under a de novo standard of review. After our review, we render judgment on the record, without deference to the legal conclusions of the tribunal below, as this court is the ultimate arbiter of the meaning of the laws of this state. See Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC, 124 So.3d at 1071.

Constitutionality of City Ordinance Number 22207

At issue in this case is Ordinance Number 22207, enacted by the City of New Orleans on March 16, 2006 “to amend and reordain Division 1 of Article II of Chapter 150 of the Code of the City of New Orleans to amend the penalties collected on delinquent ad valorem taxes; to incorporate and amend provisions relative to collection procedures and legal remedies for collection of delinquent taxes.... ” Code Sections 150 — 46 through 150-52 (as enacted by Ordinance Number 22207) provide, in pertinent part:
Sec. 150-46. Delinquent taxes— Taxing unit.
Taxing unit for purposes of this section shall mean the City of New Orleans and all jurisdictions for which the Director of Finance for the City of New Orleans collects ad valorem taxes.
Sec. 150-47. Same — Penalty and interest.
(a) Tax shall become delinquent thirty days after receipt of the tax bill. Delinquent tax incurs a delinquent penalty of *883 ten percent per annum from the date of delinquency until paid.
(b) A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid.
(c) All penalties and interest imposed by this Article shall be payable to and recoverable by the taxing unit in the same manner as if 17they were part of the tax imposed.
Sec. 150-48. Authorization of outside collectors and counsel; collection fee.
(a) In order to facilitate the collection of taxes, penalties, interest and costs due under this Article and pursuant to the self-governance authority of the Home Rule Charter of the City of New Orleans empowered by the 1974 Louisiana Constitution, Article VI, Section 4, the taxing unit may contract with a collection agency, law firm or private attorney for legal, collection, and other services related to the collection of the delinquent taxes.
(b) To defer the cost of collecting delinquent taxes, penalties, interest and costs, a collection fee of nine and one-half percent of the total amount of taxes, penalties, interest and costs shall be collected from the taxpayer, if the taxpayer has failed to remit the taxes, penalties, interest and costs within ninety days after the date the tax was due and the taxing unit has contracted with a collection agency, law firm, or private attorney for the collection of the taxes, penalties, interest and costs.
(c) All funds collected on behalf of the taxing unit for the collection fee shall be ■held by the taxing unit for the payment of the fees due under the contract for services rendered as authorized in paragraph (a) and shall not be distributed among or disbursed to any Orleans Parish taxing authority.
(d) The penalty listed in Section ISO-47 shall also apply to motor vehicle personal property taxes, beginning the last day of the subsequent month of billing. The collection fee contained in Section 150-48 shall apply to motor vehicle personal property taxes, beginning ninety days from the date of billing.
(e) Collection fees imposed by this Article shall be payable to and recoverable by the taxing unit in the same manner as if the fees were incorporated in the imposed tax.
Sec. 150-49. Legal Remedy — Suits to recover tax, penalty, interest, fees and costs paid under protest.
(a)(1) Any taxpayer protesting the payment of any tax, penalty, interest, fee or cost assessed under this Article or the enforcement of any provision of law in relation thereto, shall remit under protest to the taxing unit such tax, penalty, interest, fee or cost by paying the contested amount no later than sixty days after the date on which the tax, penalty, interest, fee or cost was imposed and at that time shall give written notice stating that the payment is being remitted “under protest”, the grounds for the protest and that he/she intends to file suit for the recovery of such tax, penalty, interest, fee or cost within thirty days of the date on which the protest payment was made.
(2) Upon receipt of this notice, the amount remitted to the taxing unit shall be placed in an escrow account and held by the taxing unit for a period of thirty days. If suit is filed for recovery of the tax, penalty, interest, fee or cost within the thirty-day period, the funds in the escrow account shall be held pending the outcome of the suit. If suit is not filed within the thirty-day period, the funds *884 held in escrow shall be released to the taxing unit.
(3)If the taxpayer follows the procedures set forth in paragraph |s(a) of this Section and prevails in his/her suit, the taxing unit shall refund the amount held in the escrow account to the claimant.
(b) This Section shall afford the sole legal remedy and right of action, in any court having jurisdiction over the parties and subject matter, for a full and complete adjudication of any and all questions arising as to the collection, enforcement and legality of any tax, penalty, interest, fee or cost assessed or arising under this Article. In such action, service of process upon the Director of Finance shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.
Sec. 150-50. Same — Recovery of costs and expenses.
(a) In addition to other costs authorized by law, a taxing unit or its authorized agent is entitled to recover from the subject property and, in the case of delinquent personal property taxes, against the tax debtor, the following costs and expenses in its efforts to collect a delinquent tax:
(1) All usual court costs, including the cost of serving process;
(2) Costs of filing for record of notice of lis pendens against property;
(3) Expenses of tax sale;
(4) Reasonable expenses that are incurred by the taxing unit or its authorized agent in determining the name, identity, and location of necessary parties and in procuring necessary legal descriptions of the property on which a delinquent tax is due;
(5) In cases where section 15(M8 is not applicable, reasonable attorney’s fees of 30 percent of the total amount of taxes, penalties, and interest due the unit; and
(6)Reasonable curator fees and expenses.
(b) Each item specified by subsection (a) of this Section is a charge against the property and shall be collectible in the same manner as the taxes, interest, penalties and costs due by the tax debtor and is subject to collection by foreclosure in a suit or as otherwise provided by law and shall be collected out of the proceeds of the sale of the property.
(c) The Director of Finance or his/her authorized agent, with the approval of the Mayor or the Chief Administrative Officer, is authorized to employ private counsel to assist in the collection of any taxes, penalties, interest or costs and expenses, including attorney’s fees, due or to represent him in any proceeding under this section.
Sec. 150-51. Same — Liability of taxing unit for costs.
(a) Except as provided by subsection (b) of this section, the taxing unit or its authorized agent is not liable in a suit to collect taxes for court costs, including any fees for service of process, arbitration, or mediation, and shall not be required to post security for the costs.
(b) Taxing unit or its authorized agent shall pay the cost of publishing citations, notices of sale, or other notices from the unit’s general fund as soon as practicable after receipt of the publisher’s claim for payment. The taxing unit is entitled to reimbursement from other taxing units that are parties to the suit for their proportionate share of the publication costs on satisfaction of any portion of the tax indebtedness before further distribution of the proceeds. A taxing unit [ flmay not pay a word or line rate for publication of citation or other required notice that exceeds the rate the *885 newspaper publishing the notice charges private entities for similar classes of advertising.
Sec. 150-52. Reimbursement of costs by governing bodies that receive ad valorem taxes.
(a) Each tax recipient governing body that receives a portion of ad valorem taxes shall reimburse the Director of Finance for the City of New Orleans the cost of collections for ad valorem taxes.
(b) The collection cost charged to each tax recipient governing body for the reimbursement of expenses associated with the collection of ad valorem taxes shall not exceed two percent (2%).
(c) The collection cost charged will be deducted by the Director of Finance for the City of New Orleans from each tax recipient governing bodies’ proportionate share of ad valorem taxes. The proceeds received from the collection charge shall be deposited into the general fund for the City of New Orleans.
(d) This section is meant to be in compliance with Act No. 254, Regular Session, 2005, enacting Louisiana Revised Statute 47 § 1997.1.
Of particular interest to the issues presented in this case, are the following sections: Sec. 150-47(a) (providing that ad valorem taxes “become delinquent thirty days after receipt of the tax bill” and delinquent taxes incur “a delinquent penalty of ten percent per annum from the date of delinquency until paid”); Sec. 150-48(a) and (b) (providing that, in order “to facilitate the collection of taxes, penalties, interest and costs due” under the Code, “the taxing unit may contract with a collection agency, law firm or private attorney for legal, collection, and other services related to the collection of the delinquent taxes” and that to “defer the cost of collecting” delinquent taxes, penalties, interest and costs, “a collection fee of nine and one-half percent ” of the total amount of taxes, penalties, interest and costs shall be collected from the taxpayer, if the taxpayer has “failed to remit” the taxes, penalties, interest and costs “within ninety days after the date the tax was due” and the taxing unit has “contracted with a collection agency, law firm, or private attorney” for the collection of the taxes, penalties, interest and costs); and Sec. 150-49(a)(l) and (b) (providing that any taxpayer protesting the payment of any tax, penalty, interest, fee or cost assessed or the enforcement of any provision 110of law, must “remit under protest to the taxing unit” such tax, penalty, interest, fee or cost “by paying the contested amount no later than sixty days after the date on which the tax, penalty, interest, fee or cost was imposed” and “at that time shall give written notice statiny that the payment is being remitted ‘under protest’, the grounds for the protest and that he/she intends to file suit for the recovery of such tax, penalty, interest, fee or cost within thirty days of the date on which the protest payment was made” and that the payment-under-protest remedy “shall afford the sole legal remedy and right of action ” for a full and complete adjudication of any and all questions arising as to the collection, enforcement and legality of any tax, penalty, interest, fee or cost assessed). (Emphasis added.)
The district court in this case performed a side-by-side comparison of Ordinance Number 22207’s provisions (set forth in City Code Sections 150-46 through ISO-52) with those at issue in this court’s 2008 Fransen v. City of New Orleans decision (which held unconstitutional Ordinance Number 22207’s predecessor, Ordinance Number 18637[6]) and concluded that there *886 were no Inappreciable or material differences between the relevant provisions of Ordinance 18637 and those of Ordinance 22207. Therefore, the district court ruled, *887 relying on Fransen ⅛ interpretation of LSA-Const. art. VII, § 25(A)(1), that, insofar as Ordinance 22207 authorized the City to place delinquent ad valorem property taxes for collection by an “outside collector,” by any method beyond the constitutional limitation of a tax sale, or to levy any penalties or collection fees[7] on delinquent ad 112valorem property taxes, it was unconstitutional. Article VII, § 25(A)(1) provides:
There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs’ sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made. [Emphasis added.]
As stated in Fransen, former Ordinance 18637 purported to authorize the City to impose on delinquent ad valorem taxpayers, in addition to interest, a penalty of three percent, and, if still delinquent on April 1st of the year in which they became delinquent, to impose an additional thirty percent penalty on the amount of taxes, penalty, and interest due, to defray costs of collection if referred for collection to an attorney or collection agent. Ordinance Number 18637 also authorized the City to file suit to “foreclose” the lien securing payment of the tax. See Fransen v. City of New Orleans, 988 So.2d at 236 and 241. After examining prior jurisprudence and the historical background of LSA-Const. art. VII, § 25, this court held that any methods of collecting delinquent ad valo-rem taxes other than by tax sales were constitutionally prohibited. Further, with respect to the penalty provisions of Ordinance 18637, the Fransen decision stated that “[b]ecause we have held that the constitution prohibits any method other than a tax sale to collect delinquent ad valorem taxes, the section of the ordinance imposing an additional penalty for collection costs must fall ... to the extent it imposes an additional | ispenalty for collection of delinquent ad valorem property taxes on immovables.” See Fransen v. City of New Orleans, 988 So.2d at 241^12. In so holding, the Fransen court reasoned that, since LSA-Const. art. VII, § 25(A)(1) provides that the tax collector notify the taxpayer of *888 the delinquency and impending tax sale, “collection by an attorney and/or a collection agency is unnecessary and prohibited.” See Fransen v. City of New Orleans, 988 So.2d at 241. Additionally, because Article VII, Section 25(A)(1) specifically enumerates a series of things (stating “the collector shall sell ... the ... property ... for the amount of the taxes, interest, and costs ” (emphasis added)), the omission of “penalties” from the listing (which could have easily been included in the list of items recoverable in a tax sale) must be deemed intentional under the settled doctrine of statutory construction Fxpressio Unius est Exclusio Alterius.[8] The fact that penalties are not collectible at the tax sale of the property, while under LSA-Const. art. VII, § 25(B) a penalty is expressly allowed to be applied when property sold in a tax sale is redeemed,[9] was a distinction considered supportive of this court’s interpretation of Article VII, Section 25(A)(1) as precluding the imposition of penalties against a delinquent ad valo-rem taxpayer. See Fransen v. City of New Orleans, 988 So.2d at 242.
Nevertheless, the City now contends, with respect to current Ordinance 22207, that the district court erred in holding it unconstitutional and failing to | u“recognize that this matter involves a change in, and evolution of, the City’s Municipal Code,” arguing that, unlike former Ordinance 18637, Ordinance 22207 is based on this Court’s holding in Fransen and only permits the collection of ad valorem taxes through a tax sale. The City attempts in this argument to suggest that the application of Fransen is limited, by attributing to the Fransen decision the following rationale as a basis for the decision: “because the means (collection suits) used by the City to recover unpaid ad valorem taxes, under Ordinance 18637, was unconstitutional, the employment of private actors to accomplish those means (collection suits) was likewise unconstitutional.” The City reasons that, because its current Ordinance 22207 does not authorize suits to enforce the collection of ad valorem taxes and only allows tax sales, Ordinance 22207 escapes the unconstitutional flaw of prior Ordinance 18637, and, thus, its nine, and one-half percent “collection fee” is constitutional, as capturing only “costs” of tax sales.
However, the City’s argument fails to take into account the facts and procedural posture underlying the Fransen decision. In Fransen, no suit had been filed by the City against the Fransen plaintiff/taxpayers. The plaintiff/taxpayers in Fransen, as in the present case, simply failed to timely pay their respective ad valorem taxes and were subsequently billed by the City for the taxes, interest, and penalties, including the penalty to defray collection costs, authorized by the applicable city ordinance. The Fransen plaintiff/taxpayers, as in the present case, paid the penalties, along with the taxes and interest, and the *889 plaintiff/taxpayers thereafter filed suit contending the assessment of penalties was unconstitutional. No foreclosure suit had been filed by the City in Fransen; thus, the basic underlying facts and procedural posture presented to the district court in Fransen were, in all essentials, the same as in the instant case.
In the course of evaluating the constitutionality of the city ordinance in effect for the pertinent time at issue in the Fransen case, this court determined]^that, not only was the portion of the statute authorizing the City to file suit against delinquent ad valorem taxpayers unconstitutional, as being outside the exclusively authorized tax sale procedure found in LSA-Const. art. VII, § 25(A)(1), but additionally, the Fran-sen decision held that the city ordinance was “unconstitutional to the extent it imposes penalties, other than interest, upon delinquent ad valorem property taxes on immovables.” See Fransen v. City of New Orleans, 988 So.2d at 242 (emphasis added). Although the City has removed from its current Ordinance 22207 the provision authorizing suit against a delinquent ad valorem taxpayer, Ordinance 22207 continues to unconstitutionally allow the imposition of penalties. While the City has abandoned, in this appeal, any request for review of the district court’s ruling as to the constitutionality of Ordinance 22207’s ten percent penalty,[10] the City maintains that the additional nine and one-half percent charge, designated in City Code Section 150-48(b) as a “collection fee,” is a “cost,” which is allowed to be collected against a delinquent taxpayer under LSA-Const. art. VII, § 25(A)(1), not an unconstitutional “penalty.” Though the city has changed the name of this nine and one-half percent charge from “penalty” to “collection fee,” we conclude, as did the district court in this case, that the nature of this particular charge remains essentially the same as its predecessor provision, the thirty percent penalty held unconstitutional in Fransen. As stated in Fransen, the former thirty percent penalty was enacted “to defray costs of collection if the taxing unit has referred the collection of the delinquent taxes, penalty and interest to an attorney or collection agent,” and could be imposed, pursuant to former City Code Section 150-46.8, if the ad valorem tax remained delinquent on April 1st of the tax year. See Fransen v. City of New \ 1fiOrleans, 988 So.2d at 241. Similarly, in the instant case, the nine and one-half percent “collection fee” was enacted “[t]o defer the cost of collection] ... [if] the taxing unit has contracted with a collection agency, law firm, or private attorney for the collection of the taxes, penalties, interest and costs” and can be imposed, pursuant to City Code Section 150-48(b), if the ad valorem tax remains delinquent after ninety days from the date the tax was due. Both the former Section 150-46.8 thirty percent penalty and the current Section 150-48(b) nine and one-half percent collection fee were designed to recoup the cost of collecting delinquent ad valorem taxes, which continued to be delinquent some three months after becoming due and the collection of which has been referred to an outside collector. The only differences between the two charges are the respective appellations and percentage amounts; i.e., there are no funda *890 mental differences. Therefore, we must conclude that the underlying principles of the Fransen decision, declaring the City’s former thirty percent “penalty” unconstitutional, are equally applicable to the City’s current nine and one-half percent “collection fee:”
Because we have held that the constitution prohibits any method other than a tax sale to collect delinquent ad valorem taxes, the section of the ordinance imposing an additional penalty for collection costs must fall. The method for collection of delinquent ad valorem property taxes is fully set forth in La. Const, art. VII, § 25(A)(1) and La.Rev.Stat. 47:2180, which provide that the tax collector shall notify the taxpayer, by certified mail or personal or domiciliary service, of the delinquency and impending tax sale. Accordingly, collection by an attorney and/or a collection agency is unnecessary and prohibited. Thus, Section 150-46.3 of the New Orleans Code of Ordinances must fall, to the extent it imposes an additional penalty for collection of delinquent ad valorem property taxes on immovables.
Fransen v. City of New Orleans, 988 So.2d at 241-42.[11] In so holding, Fran-sen 117recognized that Louisiana law not only prohibits the filing of suit to collect delinquent ad valorem taxes, but it also prohibits private entities from collecting delinquent ad valorem taxes, as only a governmental entity’s official tax collector is invested with the legal authority to do so;[12] therefore, we conclude that any penalty or collection fee designed to allow the wholesale outsourcing[13] of a govern *891 ment tax collector’s responsibility to collect delinquent ad valorem taxes is unconstitutional.[14]
| ^Furthermore, recoverable costs associated with the collection of delinquent ad valorem taxes are fully enumerated in City Code Section 150-50, allowing the recovery of the following costs: all usual court costs, including the cost of serving process; costs of notice of lis pendens against property; expenses of tax sale; reasonable expenses that are incurred by the taxing unit or its authorized agent in determining the name, identity, and location of necessary parties and in procuring necessary legal descriptions of the property on which a delinquent tax is due; and reasonable curator fees and expenses.[15] In this case, the City has not identified any costs, outside of those enumerated in City Code Section 150-50, which a tax collector might attempt to collect from an individual taxpayer responsible for the payment of delinquent ad valorem taxes due on a particular piece of immovable property within its jurisdiction. Thus, the imposition of an additional across-the-board nine and one-half percent “collection fee” to be imposed on each and every delinquent ad valorem tax payer is not tethered to actual costs incurred. After careful review and consideration of this issue, we conclude that it is implicit in provisions authorizing the recovery of a tax collector’s “costs,” in LSA-Const. art. VII, § 25(A)(1) and the Revised Statutes, Title 47, relative to the collection of delinquent ad valorem taxes, that recoverable costs be actual costs reasonably incurred to collect a particular taxpayer’s delinquent ad valorem taxes, the assessment of which can be made only on a case-by-case basis. See LSA-R.S. ■ 47:2153; LSA-R.S. 47:2154; LSA-R.S. 47:2155; LSA-R.S. 47:2158; LSA-R.S. 47:2161; LSA-R.S. 47:2163; LSA-R.S. 47:2196; LSA-R.S. 47:2202; LSA-R.S. |1947:2203; LSA-R.S. 47:2209; LSA-R.S. 47:2211; LSA-R.S. 47:2244 (“Payment also shall include the actual costs incurred by the political subdivision for preparation and filing of redemption certificates, the cost of mail, notice, publication of notice, personal service of notice, appraisal, and costs associated with the determination of tax sale parties and their notification. However, *892 the actual cost of preparation and filing of redemption certificates shall not exceed two hundred dollars.”); LSA-R.S. 47:2245; LSA-R.S. 47:2247 (“The person redeeming property adjudicated to a political subdivision shall pay also the actual costs incurred by the political subdivision and any acquiring person for the costs of all certified mail, notice, publication of notice, or personal services of notices in complying with the applicable provisions of law, including, without limitation, determination of tax sale parties and the notification of such persons of the sale or donation as allowed by law.”); LSA-R.S. 47:2291(B)(2) (“Costs pursuant to Article VII, Section 25 of the Louisiana Constitution and R.S. 47:2290 shall include costs of sending notice, costs of publication, and costs of determining tax sale parties. Costs shall also include amounts set forth in Civil Code Articles 496 and 497, if applicable.”[16] ). (Emphasis added.) See also Builder’s Lumber and Supply Company v. Jordan Lands, Inc., 228 So.2d 359, 360 (La.App. 3 Cir.1969), writ denied, 255 La. 277, 230 So.2d 587 (La.1970) (“Defendant[/tax sale |2npurchaser] in the instant case contends the word ‘costs’ includes any costs which he necessarily incurs in connection with the redemption, including attorney’s fees. We are of the opinion that this is not the proper construction to be placed on the constitutional provision and statute [... providing in pertinent part that property shall be redeemable ‘by paying the price given, including costs and five per cent penalty thereon, with interest at the rate of one per cent per month until redeemed.’]. The ‘costs’ referred to therein are the costs of the tax sale for notices and advertisements.”).
We find no merit in the City’s contention that genuine issues of material fact exist regarding whether the nine and one-half percent collection fee authorized by Ordinance Number 22207 constitutes collection of recoverable costs incurred in conducting a tax sale. City Code Section 150-50 provides a sufficient basis for the recovery of all actual costs associated a tax collector’s efforts to collect delinquent ad valorem taxes, including the “significant costs” that the City alleges it would otherwise incur, without the funds generated by the penalties and collection fees, to comply with the notice requirements set forth in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Notably, the City asserts that its tax collector’s office does not have the skills or technical resources necessary to, nor can it afford to bear the expense of, the high burden required to satisfy Mennonite ⅛ notice requirements in the post-Hurricane Katrina New Orleans area. Nevertheless, Louisiana places the duty to collect delin *893 quent ad valorem taxes on a government’s official tax collector, which includes the task of obtaining adequate information about delinquent taxpayers to issue the requisite legal notices regarding delinquency and impending tax sales. Therefore, whether the City’s tax collector is confronted with undue hardships and/or budget deficiencies, which make his/her job difficult is not relevant to whether Ordinance 22207 illegally contravenes LSA-Const. art. VII, § 25(A)(1), which limits the |⅞1 collection of delinquent ad va-lorem taxes exclusively to tax sales conducted by the tax collector. Thus, the City has not demonstrated that there exists a genuine issue of material fact on this basis.
In further support of the City’s contention that its practice of contracting with an outside collector should be upheld, the City asserts a right to engage in public-private cooperative endeavors for the performance of its tax collection efforts, which it claims under the authority of LSA-Const. art. VII, § 14(C) (“For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.”). Nevertheless, LSA-Const. art. VII, § 14(C)’s authorization of public-private cooperative endeavors conflicts with LSA-Const. art. VII, § 25(A)(l)’s prohibition of outside collectors for the collection of delinquent ad valorem taxes.
When one constitutional provision addresses a subject in general terms and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail. Touchet v. Broussard, 2010-0380 (La.3/3/10), 31 So.3d 986, 992. In this case, it is not possible to harmonize the two constitutional provisions, and, therefore, the more detailed LSA-Const. art. VII, § 25(A)(1) must prevail over the general authority of LSA-Const. art. VII, § 14(C).
The City has further asserted that its city ordinance provisions are a valid exercise of its “home rule” charter. However, a preexisting home rule charter’s grant of power is limited by LSA-Const. art. VI, § 4[17] only by its provision that thej^local government may not exercise that power inconsistently with the constitution. Thus, although home rule does not entail complete autonomy, in affairs of local concern, a home rule charter government possesses powers that, within its jurisdiction, are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter. New Orleans Campaign for a Living Wage v. City of New Orleans, 2002-0991 (La.9/4/02), 825 So.2d 1098, 1103 (citing Morial v. Smith & Wesson Corporation, 2000-1132 (La.4/3/01), 785 So.2d 1, 14; Miller v. Ou-bre, 96-2022 (La.10/15/96), 682 So.2d 231, 236; City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 244; *894 and Francis v. Mortal, 455 So.2d 1168, 1171 (La.1984)).
Upon review, we find no basis to overturn the district court ruling of unconstitutionality as to City Ordinance 22207. Objection of No Cause of Action
The district court in this case granted the City’s exception of no cause of action as to Mr. Jackson and Mr. Hardin, dismissing these plaintiffs, for failing to comply with the applicable law requiring payment under protest in order to contest the imposition of penalties and collection fees assessed on these plaintiffs’ delinquent ad valorem taxes. The district court also granted the exception of no cause of action as to, and dismissed, a portion of plaintiff KSD’s claims (disputing 2008 tax penalties and collection fees) for KSD’s failure to timely assert a protest as to these penalties and fees. In so ruling, the district reasoned that the plaintiffs were required to comply with the statutory framework established for a taxpayer to protest sums imposed in connection with delinquent ad valorem taxes and that, insofar as the plaintiffs failed to do so, they were without a cause of action to ^contest the sums that were not paid “under protest.” •
The payment-under-protest provisions applicable to this case are found in City Code Section 150 — 49(a)(1),[18] which requires any taxpayer protesting the payment of any tax, penalty, interest, fee, or cost assessed or the enforcement of any provision of law, to “remit under protest to the taxing unit” such tax, penalty, interest, fee, or cost “by paying the contested amount no later than sixty days after the date on which the tax, penalty, interest, fee, or cost was imposed.” Further, City Code Section 150-49(a)(l) provides that a protesting taxpayer must “give written notice stating that the payment is being remitted ‘under protest’, the grounds for the protest and that he/she intends to file suit for the recovery of such tax, penalty, interest, fee or cost within thirty days of the date on which the protest payment was made.” Under City Code Section 150-49(b) the payment-under-protest remedy is *895 the “sole legal remedy and right of action” for a “full and complete adjudication of any and all questions arising” as to the collection, enforcement, and legality of any tax, penalty, interest, fee, or cost assessed. See also LSA-R.S. 47:2134(0 (also addressing the circumstances under which a ^taxpayer may maintain a “legality” challenge of “an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law,” by making a timely payment “under protest” of the “disputed amount” and filing suit (emphasis added)).
In this case, the plaintiffs did not contest, the correctness or legality of the underlying ad valorem tax; they only asserted that the delinquent penalties and collection fees were unconstitutional. Therefore, in accordance with City Code Section 150-49(a)(1), the plaintiffs should have paid these contested amounts (the penalties and collection fees) no later than sixty days after the date on which the penalties and collection fees were imposed against each respective plaintiff/taxpayer, as well as giving the notices required by Section 150-49(a)(1). The plaintiffs do not dispute that, as found by the district court, they did not follow the payment-under-protest provisions requiring them to timely submit payment under protest of the contested penalties and collection fees (with the exception of KSD, who paid its 2009 penalties and fees under protest). For this reason, the district court granted the City’s exception of no cause of action.
The peremptory exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court. The burden of demonstrating that a petition fails to state a cause of action is upon the mover. The sufficiency of a petition subject to an exception of no cause of action is a question of law, and a de novo standard is applied to the review of legal questions; this court renders a judgment based on the record without deference to the legal conclusions of the lower courts. See Foti v. Holliday, 2009-0093 (La.10/30/09), 27 So.3d 813, 817.
125Clearly, the plaintiffs (with the exception of KSD’s 2009 tax year claim) in this case failed to follow the legal requirements necessary to preserve their right to contest the legality of the imposition of delinquent ad valorem penalties and collection fees. Yet, the plaintiffs contend that the payment-under-protest laws should not apply to the unconstitutional penalties and fees at issue herein. We find no merit in this assertion.
To ensure a state’s ability to engage in sound fiscal planning, the U.S. Supreme Court has approved the use of post-deprivation relief in taxation disputes, as long as the post-deprivation relief is meaningful, such as when a refund is provided to a successful taxpayer. A state may impose various procedural requirements on actions for post-deprivation relief, such as: (1) that only taxpayers paying under protest would be entitled to relief, and (2) that actions could be subject to short statutes of limitation. See McKes-son Corporation v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 44-45, 110 S.Ct. 2238, 2254, 110 L.Ed.2d 17 (1990); Cat’s Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1200; Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 702-3 (La.1993). The applicable payment-under-protest provisions in this case satisfy these policies.
*896 City Code Section 15CM9(a)(3) provides that, if the taxpayer follows the procedures set forth and prevails in his/her suit, the taxing unit shall refund the amount held in the escrow account to the claimant. Also, LSA-R.S. 47:2134(0(4) states that if the taxpayer prevails, the collecting officer or officers shall refund the disputed amount to the taxpayer, with interest at the actual rate earned on the money paid under protest in the escrow account during the period, from the date such funds were received by the collecting officer to the date of the refund. From these provisions, it is evident that the McKesson requirement of meaningful post-deprivation relief, in a payment-under-protest procedure, is met by this statutory 12fischeme, which provides a successful plaintiff/taxpayer with a refund, with interest, of illegally collected sums.
The plaintiffs submit, in support of a reversal of the dismissal of their claims, that the City should be estopped from enforcing the payment-under-protest laws, because the City utilized an unpublicized and allegedly discriminatory process to waive the imposition of delinquency penalties and collection fees for select taxpayers, and that the City’s utilization of a payment-under-protest procedure was unconstitutional, as applied, on the basis of equal protection and due process considerations, because the City granted waivers to select taxpayers and did not make the waiver process available to the plaintiffs or to the public at large. We find no merit in these arguments as they are essentially further substantive assertions of unconstitutionality, which go to the merits of the legality of the delinquency penalties and collection fees and have no bearing on the procedural prerequisites for bringing an action on the legality of these penalties and fees.
Accordingly, we conclude that the district court did not err in sustaining the City’s exception of no cause of action, as to Mr. Jackson’s and Mr. Hardin’s claims and as to KSD’s 2008 claim.

Motion to Strike

The City has filed, in this court, a motion to strike exhibits produced by the plaintiffs during the November 18, 2011 district court hearing of the matters at issue herein, which were marked “filed” by the district deputy clerk, but as to which the City contends the plaintiffs failed to formally introduce into evidence and which the City further asserts were not formally accepted into evidence by the district court. The City’s motion to strike was referred to the merits of this appeal for disposition.
|270ur review reveals that the exhibits at issue include: copies of city ordinances; affidavits of the plaintiffs and/or a plaintiffs representative; Fransen v. City of New Orleans pleadings; a copy of 2009 La. Acts, No. 540; correspondence to and from a KSD representative; an affidavit and a deposition of City employees; and an example of a blank delinquency penalty “waiver” form, along with various completed forms by a selection of taxpayers. With respect to the items of evidence bearing on the district court’s summary judgment rulings, duplicates of the affidavits had previously been filed into the record in connection with the motion for summary judgment, so the additional introduction of the affidavits into evidence at the hearing on the motion for summary judgment was unnecessary. As to the items of evidence produced in support of the plaintiffs’ argument against dismissal of their claims for failure to state a cause of action (because the payment-under-protest law should not be enforced against them because of the allegedly unconstitutional, unpublicized, and selective penalty waiver program), as *897 we have stated hereinabove, we find this argument irrelevant to the issue of whether the procedural prerequisites for suit had been met. Consequently, whether evidence in support of such an argument was properly filed with the district court is also irrelevant. Accordingly, we find no merit in the City’s motion to strike, and we hereby deny the motion.
CONCLUSION
In accordance with this court’s previous ruling in Fransen, holding the predecessor to City Ordinance 22207 unconstitutional, and our conclusion that the Fransen rationale applies with equal force to the pertinent portions of City Ordinance 22207, as well as our interpretation of applicable ad valorem tax collection law that costs assessed in connection therewith should be actual costs reasonably incurred to collect a particular taxpayer’s delinquent ad valo-rem taxes, the assessment of which can be made only on a case-by-case basis, we concludej^that the district court correctly granted summary judgment in favor of the plaintiff KSD declaring City Ordinance 22207 unconstitutional insofar as its provisions contain any language that permits the City to grant to an outside collector the authorization to collect delinquent ad valorem property taxes on immovables and/or any language authorizing the City to use any method beyond the constitutional limitation of a tax sale to collect such taxes and/or to the extent that the ordinance provisions authorize the levying of penalties and collection fees on delinquent ad valorem taxes. We further conclude that the district court correctly sustained the exception of no cause of action as to the claims of Jackson and Hardin, as well as to KSD’s 2008 claim, since the plaintiffs did not comply with the applicable payment-under-protest law. Further, we deny the City’s motion to strike.
DECREE
For the reasons stated herein, we deny the motion to strike, affirm the district court judgment, and remand the matter to the district court for further proceedings consistent with the foregoing.
MOTION TO STRIKE DENIED; JUDGMENT AFFIRMED; REMANDED.
GUIDRY, Justice, dissents in part and assigns reasons.
GUIDRY, Justice, dissents in part and assigns reasons.
|,I respectfully dissent from the majority’s affirmation of summary judgment in favor of the plaintiff, KSD Properties, L.L.C., finding New Orleans City Ordinance No. 22207 unconstitutional under La. Const. VII, § 25(A)(1). In my view, summary judgment under La.Code Civ. Proc. art. 966 is not warranted under the law and there remain genuine issues of material fact.
First, I disagree with the majority’s analysis of the interplay between La. Const, art. VII, § 14(C) and La. Const, art. VII, § 25(A)(1). I see no absolute prohibition, express or implied, in La. Const, art. VII, § 25(A)(1) that would preclude the City from entering into cooperative endeavors with private vendors to perform some of the work involved in collecting delinquent ad valorem taxes by means of a tax sale. Even if La. Const, art. VII, § 25(A)(1) is read to specifically assign only to the tax collector certain tasks: “giving notice to the delinquent in the manner provided by law;” “advertising] for sale property on which the taxes are due;” and, on the day of sale, “selling] the portion of the property which the debtor points out,” there is no language therein that expressly or implicitly |2prohibits the tax collector from contract *898 ing with a private entity or individual to assist the tax collector with complying with those duties and the stringent notice requirements for tax sales required by Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 108 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Further, our holding in Fransen v. City of New Orleans, 08-0076 (La.7/1/08), 988 So.2d 225, 240, that La. Const, art. VII, § 25(A)(1) “implicitly prohibits any proceeding other than a tax sale for collection of delinquent ad valorem property taxes,” did not go so far as to prohibit the tax collector from contracting with private entities or individuals to serve the “public purpose” of carrying out those duties in a cost effective manner. See La. Const, art. VII, § 14(C). Accordingly, I disagree with the majority’s determination that the tax collector, and only his or her “in house” employees, must perform these functions, with no assistance whatsoever from any outside party or contractor through a cooperative endeavor that would otherwise be authorized by La. Const, art. VII, § 14(C).
Second, I find there remain genuine issues of material fact that militate against a grant of summary judgment on this record. There is no doubt, and the majority does not disagree, that the City may recover the unpaid taxes, interest, and costs through a tax sale. Though the majority has dismissed the nine and one-half percent collection fee as a prohibited “penalty,” the City maintains this fee constitutes its attempt at collecting recoverable costs incurred in conducting a tax sale. The City presented the affidavit of its finance director attesting that this fee captures the costs incurred as a result of complying with Louisiana law and Mennonite and its progeny. There has been no factual determination that this fee does not reasonably, equitably, or efficiently capture the actual costs of conducting the tax sales to which the City would otherwise be entitled.

. A second amending petition was purportedly filed by the plaintiffs to add as an additional petitioner, Orlando Smiley: however, the second amending petition does not appear in *880 the district court record lodged with this court (though the City’s answer in response to the second amending petition does appear in the record).

. We note that, although initially assigned to a different division of the district court, the City’s motion to transfer this case to the same division of the district court as, and to consolidate it with, the Fransen suit was granted over the plaintiffs' opposition; thereafter, the matter was heard by the same district court judge as in Fransen.

. The trial court specifically rejected the City’s argument that the ten percent and nine and one-half percent penalties were "costs” of the tax sale proceeding, holding that allowable tax sale costs were only those listed in Code § 150-50.

. As stated in LSA-Const. art. V, § 5(F), the supreme court has appellate jurisdiction over all issues involved in a civil action properly before it, except as limited by LSA-Const. art. V, § 5(C) ("Except as otherwise provided by this constitution, the jurisdiction of the supreme court in civil cases extends to both law and facts ..."). See Unwired Telecom Corp. v. Parish of Calcasieu, 2003-0732 (La. 1/19/05), 903 So.2d 392, 401-2 (on rehearing). Thus, we address the plaintiffs' appeal (presenting issues other than constitutionality) pursuant to this court’s ancillary jurisdiction, in conjunction with our review of the City’s appeal of the judgment declaring its municipal code provisions unconstitutional.

. Article VII, § 14(C) provides: "For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.”

. Ordinance 18637 provided, in Code Sections 150-46.1 through 150-46.6, as follows:
*886 Sec. 150-46.1 Taxing Unit.
A taxing unit for purposes of this Section shall mean the City of New Orleans and all jurisdictions for which the Director of Finance for the City of New Orleans collects ad valorem taxes.
Sec. 150-46,2 Penalty and Interest.
(a) A delinquent tax incurs a penalty of three percent of the amount of the tax on the day such tax becomes delinquent.
(b) A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid in accordance to LSA-R.S. 47:2101.
Sec. 150-46.3 Additional Penalty for Collection Costs.
(a)All delinquent taxes for prior years, and taxes that remain delinquent on April 1 of the year in which they became delinquent, incur an additional penalty to defray costs of collection if the taxing unit has referred the collection of the delinquent taxes, penalty and interest to an attorney or collection agent. The amount of die additional penalty shall be thirty percent of the amount of taxes, penalty, and interest due.
Sec. 150-46.4 Suit to Collect Delinquent Tax.
(a) At any time after its tax on property becomes delinquent, a taxing unit or its authorized agent may file suit to foreclose the lien securing payment of the tax. The suit must be in a court of competent jurisdiction for the parish in which the tax was or, is imposed.
(b) A suit to collect a delinquent tax takes precedence over all other suits pending in courts.
(c) In a suit brought under Subsection (a), a taxing unit or its authorized agent may foreclose any other lien on the property in favor of the taxing unit.
Sec. 150-46.5 Recovery of Costs and Expenses.
(a) In addition to other costs authorized by law, a taxing unit or its authorized agent ' is entitled to recover from the subject property and, in the case of delinquent personal property taxes, against the tax debtor the following costs and expenses in its efforts to collect a delinquent tax:
(1) all usual court costs, including the cost of serving process;
(2) costs of filing for record of notice of lis pendens against property;
(3) expenses of tax sale;
(4) reasonable expenses that are incurred by the taxing unit or its authorized agent in determining the name, identity, and location of necessary parties and in procuring necessary legal descriptions of the property on which a delinquent tax is due; and
(5) in cases where Sec. 150-46.3(a) is not applicable, reasonable attorney’s fees of thirty percent of the total amount of taxes, penalties, and interest due the unit.
(6) reasonable curator fees and expenses.
(b) Each item specified by Subsection (a) of this section is a charge against the property and shall be collectible in the same manner as the taxes, interest, penalties and costs due by the tax debtor and is subject to collection by foreclosure in a suit or as otherwise provided by law and shall be collected out of the proceeds of the sale of the property.
(c) The Director of Finance or his/her authorized agent, with the approval of the Mayor or the Chief Administrative Officer, is authorized to employ private counsel to assist in the collection of any taxes, penalties, interest or costs and expenses, including attorney’s fees, due or to represent him in any proceeding under this section.
Sec. 150-46.6 Liability of Taxing Unit for Costs
(a) Except as provided by Subsection (b) of this section, a taxing unit or its authorized agent is not liable in a suit to collect taxes for court costs, including any fees for service of process, arbitration, or mediation, and shall not be required to post security for the costs.
(b) A taxing unit or its authorized agent shall pay the cost of publishing citations, notices of sale, or other notices from the unit’s general fund as soon as practicable after receipt of the publisher’s claim for payment. The taxing unit is entitled to reimbursement from other taxing units ■ that are parties to the suit for their proportionate share of the publication costs on satisfaction of any portion of the tax indebtedness before further distribution of the proceeds. A taxing unit may not pay a word or line rate for publication of citation or other required notice that exceeds the rate the newspaper publishing the notice charges private entities for similar classes of advertising.

. Although the district court used only the word "penalties” in its judgment, it was apparent from the written reasons assigned that the judgment of the court also contemplated the nine and one-half percent "collection fee” set forth in City Code Section 150-50 in its declaration of unconstitutionality. In the assigned written reasons, both the ten percent "penalty" and the nine and one-half percent "collection fee” were under discussion, and, with respect to the latter, the district court judge concluded that "the authorization of outside collectors or counsel to gather delinquent taxes is prohibited” by LSA-Const. art. VII, § 25(A)(1), as stated in Fransen. The district court then concluded, in a succeeding paragraph, that "penalties” were also impermissible, except for the five percent penalty allowed by LSA-Const. art. VII, § 25(B) upon the redemption of property previously sold at a tax sale. Further, the district court referred to both the penalty and the collection fee collectively as "fines.”

. The settled doctrine of statutory construction Expressio Unius est Exclusio Alterius dictates that when the legislature specifically enumerates a series of things, the legislature’s omission of other items, which could have easily been included in the statute, is deemed intentional. International Paper Company, Inc. v. Hilton, 2007-0290 (La. 10/16/07), 966 So.2d 545, 558-59; Filson v. Windsor Court Hotel, 2004-2893 (La.6/29/05), 907 So.2d 723, 728; State Through Department of Public Safety and Conections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission, 94-1872 (La.5/22/95), 655 So.2d 292, 302.

. LSA-Const. art. VII, § 25(B)(1), provides: "The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption." (Emphasis added.)

. The City states, in brief to this court, that, though it does not believe the district court ruling on its ten percent penalty provision was correct, it "is not challenging that aspect of the District Court’s Judgment in this appeal....” The City reiterated its abandonment of this issue in its oral argument before this court. Therefore, the district court’s ruling of unconstitutionality as to the ten percent penalty, codified in City Code Section 150-47, is final.

. We note that LSA-R.S. 47:2062(A) also purports to authorize a ten percent "commission'' to an attorney who assists a tax collection in the collection of delinquent taxes, providing:
There may be an attorney at law or agency whose duty it shall be to aid the parish tax collectors in the collection of all taxes that are delinquent and have become final. Upon all taxes and penalties collected through the assistance of such attorney or agency, the delinquent owing the tax shall pay a commission to such tax collector of ten per centum (10%) calculating same upon the aggregate amount of taxes and penalties so collected and paid over to the tax collector; this attorney's commission shall be paid by the taxpayer and collected by the tax collector as costs at the same time that the taxes, interest, and penalties are collected.
However, the validity of this provision was not litigated before the district court in this case, nor in Fransen.

. Tax collectors are designated in LSA-R.S. 47:2051, which provides, in pertinent part:
The sheriffs of the several parishes of the state, the parish of Orleans excepted, shall be ex-officio collectors of state and parish taxes. There shall be one state tax collector for the city of New Orleans who shall be elected, at the time provided for the election of parochial officials, for the term of four years.
The tax collectors shall be the collectors of all parish and district taxes and shall have the same power to enforce the collection of parish taxes as to enforce the collection of state taxes.
(Emphasis added.) See City Code Section 150-46, stating that "the Director of Finance for the City of New Orleans collects ad valo-rem taxes." See also LSA-Const. art. VII, § 25(A)(1); LSA-R.S. 47:2061 (stating that "[e]ach tax collector is authorized to appoint as many deputies as he may require, who shall take the constitutional oath of office, and from whom the tax collector shall require such security in his own favor as he deems sufficient; and he may perform all the functions of the office of tax collector through such deputies, but he shall be officially and pecuniarily responsible on his bonds, and in all other respects for the acts of the deputies ..." (emphasis added)); LSA-R.S. 47:2153 et seq.

.In so holding, we do not imply that, nor decide herein whether, a tax collector is prohibited from outsourcing, on a case-by-case basis, one or more particular tasks related to, and/or necessary for, accomplishing the col *891 lection of delinquent ad valorem taxes to some other public or private entity, when the particular tasks are not among those specifically required to be performed only by the government’s official tax collector, as set forth in LSA-Const. art. VII, § 25(A)(1) (assigning to the tax collector the tasks of: "giving notice to the delinquent in the manner provided by law”; "advertisfing] for sale the property on which taxes are due”; and, on the day of sale, "sell[ing] the portion of the property which the debtor points out"), or other applicable State law.

. We note that, following Fransen, an attempt was made to amend Article VII, Section 25, via passage by the legislature of 2009 La. Acts, No. 540, wherein the legislature passed a resolution to submit certain changes in this constitutional provision to the State’s voters, including changing the phrase in Section 25(A)(1), reading "the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs,” to read: "the collector shall sell immediately the property which any bidder will buy for the amount of the taxes, interest, penalties, and costs.” (Emphasis added.) The matter was placed before the voters on November 2, 2010 (see http:// staticre-sults.sos.la.gov/11022010/11022010_State-wide.html), and it failed to pass, by a margin of 55% against the amendment to 45% for the amendment. See also 2009 La. Acts, No. 507.

. We note that, in addition, City Code Section 150-50(a)(5) allows recovery of an attorney’s fee, as a "cost,” as follows: "In cases where section 150-48 is not applicable, reasonable attorney’s fees of 30 percent of the total amount of taxes, penalties, and interest due the unit.” However, Section 150-50(a)(5) has not been placed at issue in this litigation, as City Code Section 150-48 is the provision at issue herein.

. Louisiana Civil Code Articles 496 and 497 provide:
Art. 496. Constructions by possessor in good faith
When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable.
Art. 497. Constructions by bad faith possessor
When constructions, plantings, or works are made by a bad faith possessor, the owner of the immovable may keep them or he may demand their demolition and removal at the expense of the possessor, and, in addition, damages for the injury that he may have sustained. If he does not demand demolition and removal, he is bound to pay at his option either the current value of the materials and of the workmanship of the separable improvements that he has kept or the enhanced value of the immovable.

. Article VI, Section 4 provides:
Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent -with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions. [Emphasis added.]

. Although, herein, we have affirmed the district court judgment declaring portions of the city ordinance unconstitutional, City Code Section 150-49 was not substantively affected by that ruling. The unconstitutionality of one portion of a law does not necessarily render the entire law unenforceable. The test for severability is whether the unconstitutional portions of the law are so interrelated and connected with the rest of the law that they cannot be separated without destroying the intention manifested by the governing body in passing the law. The test is whether the governing body would have passed the law had it been presented with the invalid features removed. Where the purpose of the law is defeated by the invalidity of part of the law, the entire law is void. See World Trade Center Taxing District v. All Taxpayers, Property Owners, 2005-0374 (La.6/29/05), 908 So.2d 623, 637-38. In the instant case, removal of the unconstitutional penalty/collection fee provisions nevertheless leaves other valid and necessary ad valorem collection provisions unaffected, which address issues aside from penalty/collection fee issues, such as: designation of the "taxing unit” and "tax collector”; defining when taxes become delinquent; setting forth the accrual of interest on delinquent taxes and the rate thereof; authorizing the tax collector to recover costs and delineating the types of costs recoverable; defining the taxing unit’s liability for court costs, publishing and notice costs, and the division of responsibility between taxing units for costs; as well as providing procedures for the exercise of a taxpayer’s legal remedies. Undoubtedly, even without the unconstitutional provisions, it would have been beneficial for the City of New Orleans to have passed City Ordinance 22207 to implement these remaining provisions, which are necessary to the effectual collection of ad valorem taxes. Therefore, we conclude that the offending portions can be severed while leaving the remainder of the ordinance intact. See Pierce v. Lafourche Parish Council, 99-2854 (La.5/16/00), 762 So.2d 608, 615.