Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,515-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DA'VYTA GRAY                                    Plaintiff-Appellant

versus

TOWN OF RINGOLD,                               Defendants-Appellees
BIENVILLE PARISH SHERIFF'S
OFFICE, THE BIENVILLE
PARISH POLICE JURY, ET AL

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Bienville, Louisiana
Trial Court No. 46,729

Honorable William R. "Rick" Warren, Judge

* * * * *

D.F. JACKSON & ASSOCIATES, LLC          Counsel for Appellant
By: Dorothy F. Jackson

BRITTANY M. YOUNG,
ATTORNEYAT LAW, LLC
By: Brittany McKeel Young

PETTIETTE, ARMAND, DUNKELMAN,           Counsel for Appellee,
WOODLEY & CROMWELL, LLP                  Bienville Parish Police
By:  C. Cavett Feazel                    Jury
     Joseph Woodley

JIMMY WAYNE "JIMBO" YOCOM, JR.           Counsel for Appellee,
                                         Town of Ringgold

COOK, YANCEY, KING & GALLOWAY
By: Jordan B. Bird
    Elizabeth Mendell Carmody
    James Ashby Davis

Counsel for Appellees,
Bienville Parish Sheriff's
Office and Bienville
Sheriff, John Balance

AYRES, SHELTON, WILLIAMS, BENSON
& PAINE, LLC
By: Curtis Ray Shelton

Counsel for Appellees,
Kristine Shelton and
William Shelton

\* \* \* \* \*

Before STONE, STEPHENS, and ELLENDER, JJ.

**STONE, J.**

This appeal arises from the Second Judicial District Court, the Honorable William "Rick" Warren, presiding. Plaintiff-Appellant, Da'vyta Gray ("Appellant"), filed suit against defendants for injuries he suffered after being attacked by a pack of dogs. The appellant now seeks review of the trial court's ruling granting the Bienville Parish Police Jury's exception of no cause of action.

## FACTS AND PROCEDURAL HISTORY

On September 27, 2023, the appellant was walking on Pine Street in Ringgold, Louisiana, when he was viciously attacked and mauled by a pack of unrestrained dogs.[1] The attack lasted for several minutes before the owners of said dogs came outside to restrain them. The appellant suffered approximately 130 bites to his legs, arms, and torso as a result of the attack. He was transported by ambulance to LSU Health Center in Shreveport, where he underwent at least 5 surgeries to save his life and limbs. The surgeries included repair of the appellant's ankle, replacing plates in his legs that were torn out by the dogs, as well as procedures to remove the dog's teeth from his body that remained after the attack.

The appellant filed a petition for damages naming Charlotte and Shawn Hubbard (the owners of the dogs), William and Kristine Shelton (the owners of the home where the attack took place), the Town of Ringgold, the Sheriff's Department, and the Bienville Parish Police Jury ("BPPJ"), for the

---

[1] The pack consisted of at least 12 dogs. The appellant did not provoke or threaten the dogs.

injuries he sustained. The appellant's petition alleges the following pertinent facts:

1. At the time of the attack, appellant was simply walking on Pine Street;

2. The BPPJ and local law enforcement knew of the statewide leash law and, thus, had a duty pursuant to La. R.S. 3:2731 to levy and collect annual per capita license taxes on all dogs, enact ordinances for the regulation of dogs running at large, and maintain pounds for the impounding of dogs but failed to do so, which directly resulted in the damages suffered by the appellant;

3. All the named defendants breached their collective duties owed to the appellant;

4. All the named defendants had knowledge of the "stray dog problem" in Ringgold prior to the attack on the appellant, but failed and/or refused to enforce the dog laws, due to their failure to create an animal control department or erect a pound for the purpose of complying with state law;

5. The issue of vicious dogs and the need to build a shelter was brought up at various town and parish meetings during the months preceding the attack on the appellant, putting all defendants on notice of the problem, but to no avail;

6. The BPPJ received numerous complaints from citizens of Ringgold specifically regarding the vicious nature of the dogs roaming the streets and creating a threatening environment prior to the attack on the appellant;

7. The acts of fault, gross and wanton negligence, lack of skill and flagrant, wanton, and reckless disregard for the rights and safety of the appellant committed by the BPPJ (and others) resulted in significant near fatal injuries to the appellant.

In short, the appellant alleges that the defendants knew the dogs were unaccompanied and roaming the public streets of Ringgold, posing an unreasonable risk of harm to the public. The appellant propounded interrogatories on all named defendants.

The BPPJ — without answering either the petition or interrogatories from the appellant — filed a peremptory exception of no cause of action, relying on immunity pursuant to La. R.S. 9:2798.1, arguing that mere knowledge of complaints concerning dogs roaming at large is insufficient to overcome the immunity granted to them by statute. The BPPJ argued that the creation of a pound or animal control board is a discretionary function grounded in social and economic policy and the decision to enact ordinances as allowed by the statute was made at the ministerial level, not the operational level.[2] In response to the exception, the appellant filed a memo in opposition questioning whether immunity exists under the specific facts and circumstances alleged in the petition for damages. The appellant asserted that the issue before the trial court was not whether the act of enacting an ordinance or erecting a pound was discretionary, but instead, whether that discretion was the type shielded by the statute. Moreover, the appellant stated that taking the well-plead facts of the petition as true, the

_____

[2] La. R.S. 9:2798.1 (B) provides: Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

3

law does in fact provide a remedy for the negligence committed by the BPPJ.

A hearing on the exception was held on December 12, 2024, wherein the BPPJ argued that it is a governing body — not a law enforcement agency — and, therefore, it is not mandated to do anything under La. R.S. 3:2774 because the petition fails to allege that the dogs were *seized*; and a governing body is only mandated to provide a place of impoundment for *seized* dogs.[3] The trial court inquired as to whether the dogs had attacked anyone in the past and whether it was brought to the attention of the BPPJ. Both inquiries were answered in the affirmative.[4] Furthermore, the appellant asserted that his petition sufficiently states a cause of action against the BPPJ and argued that since sufficient discovery has not taken place, it would be premature to dismiss the claims against it.

After taking the matter under advisement, the trial court rendered judgment against the appellant and issued written reasons, finding that the BPPJ has immunity under La. R.S. 9:2798.1 since the dogs were not first seized by law enforcement. The court further noted that laws currently exist to cover situations involving dangerous dogs and agreed with the BPPJ's contention that it had no authority to seize or board the dogs, as the construction of facilities for the impoundment of dogs is "totally discretionary." The trial court granted the BPPJ's exception and dismissed

---

[3] La. R.S. 3:2774 provides that each parish shall provide suitable shelters or facilities for dogs seized under the provisions of this Part.

[4] It was approximately one month after the appellant was attacked that the dogs were seized. (The authorities located human remains on Pine Street of a man who was believed to have been attacked, dismembered, and killed by the same dogs on or about September 26, 2023—around the time of the appellant's attack.)

4

the appellant's claims against it with prejudice. The appellant brings this appeal from that judgment.

## DISCUSSION

The appellant asserts that the trial court erred as a matter of law in sustaining the BPPJ's exception of no cause of action, based on its discretion, pursuant to La. R.S. 3:2773[5] and La. R.S. 3:2731,[6] because the petition for damages sets forth allegations that the BPPJ had actual knowledge that the dogs were unaccompanied and roaming the streets of Ringgold at large, posing an unreasonable risk of harm to the public. The appellant argues that the trial court failed to consider all allegations of fact contained in the appellant's petition as true, except for the fact that the dogs were not seized.

Consequently, the appellant contends that the trial court prematurely sustained BPPJ's exception of no cause of action (and dismissed his claims with prejudice) on the grounds that the dogs were not seized. Appellant also argues that the law provides him a remedy because of the BPPJ's negligence.

---

[5] La. R.S. 3:2773 (B) provides: Any citizen may, or the sheriff, constable, or other police officers of any parish, ward, or municipality shall seize any dog found unaccompanied by its owner or keeper and running at large on any road, street, or other public place, or trespassing on any premises other than the premises of the owner. If the dog is wearing a collar bearing a tag showing the name and address of its owner, it shall be impounded and the citizen or officer so seizing and impounding the dog shall immediately thereafter by written notice notify the owner of the dog, at the address disclosed by the tag on the dog's collar, that the dog has been seized and impounded by him, and unless the owner or keeper of the dog shall, within seven days from the receipt of the notice, claim the dog and pay the citizen or officer a fee of one dollar for seizing and a fee of twenty-five cents for each day it is impounded, it shall be disposed of in a humane manner.

[6] La. R.S. 3:2731 provides: The governing bodies of all parishes and municipalities may adopt ordinances regulating dogs running at large; regulating or prohibiting vicious or dangerous dogs; or to limit the enforcement of said ordinances or the imposition of fees and fines thereunder. In addition, such ordinances may provide for the utilization of the proceeds of dog and cat license fees for the operation of its animal control program or for the effective enforcement of its animal control ordinances.

Oppositionally, the BPPJ argues that use of the word "may" under La. R.S. 3:2731 makes their authority discretionary. They cite *Pineville City Court v. City of Pineville,* 22-336 (La. 1/27/23), 355 So. 3d 600, which provides that when the language of a statute is discretionary, the actions of a public body with regard to implementation of the statute are entitled to immunity.

In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court should conduct a *de novo* review because the exception raises a question of law and the trial court's decision is based solely on the sufficiency of the petition. *Industrial Companies, Inc. v. Durbin,* 02-0665 (La. 1/28/03), 837 So. 2d 1207; *Robinson v. Allstate Ins. Co.,* 53,940 (La. App. 2 Cir. 5/26/21); 322 So. 3d 381, *writ denied,* 21-00906 (La. 10/19/21), 326 So. 3d 264. The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. *Ramey v. DeCaire*, 03-1299 (La. 3/19/04), 869 So. 2d 114. All doubts are resolved in favor of the sufficiency of the petition to afford litigants their day in court. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Ellis v. Mai*, 56,074 (La. App. 2 Cir. 2/26/25), 408 So. 3d 416. An exception of no cause of action is triable on the face of the petition; and for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Industrial Companies v. Durbin, supra.* It should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Badeaux v. Sw. Computer*

*Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 121; *Robinson v. Allstate Ins. Co, supra.* Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. *Ellis v. Mai, supra.*

Under the immunity statute, the court may only ascertain whether the acts of the governmental agency were discretionary or policy-making decisions, and if so, whether they were reasonably related to the government objective or constituted misconduct on the part of the entity. *DuBois v. McGuire*, 579 So. 2d 1025 (La. App. 4 Cir. 1991), *writ denied sub nom. Dubois v. Waterman*, 587 So. 2d 696 (La. 1991). Conduct cannot be discretionary unless it involves an element of judgment or choice. Thus, discretionary immunity will not apply when a specific course of action is prescribed. *Id.*

This case is a clear exhibition of cause and effect, due to the negligence of all named defendants in the petition — including the BPPJ — as the dog attacks have only progressed or escalated in severity. The appellant was almost mauled to death by errant dogs, yet the defendants knowingly chose to remain inactive and turn a blind eye to an imminent danger in the community. As a result of the BPPJ's inaction — although not exclusively — another man was actually mauled to death by the same pack of dogs. Pointing the proverbial finger is anticipated with any case where one may be at fault. However, in the matter *sub judice*, the BPPJ maintains their contention that any duty they had in addressing this problem, i.e., to construct an animal shelter, is discretionary. Alternatively, the BPPJ argues

that it had no duty to act until the dogs were seized by a law enforcement agency.

We find, as a practical matter, that waiting for dogs to be seized to *then* erect a shelter is absurd, as there would be no place to house them once a seizure occurs. Seemingly, a more proactive approach to this particular problem would have been responsible and in the best interest of the community that the BPPJ represents. The "cross that bridge when we get there" mentality is woefully unacceptable. The BPPJ is mandated, under La. R.S. 3:2774, to provide a suitable shelter or facility for seized dogs and not at the moment of seizure, but rather in advance to prepare for the anticipated seizures; otherwise, the mandate is nonsensical. The trial court was incorrect to presume that a dog must first be seized before the mandatory duty attaches. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. The BPPJ knew these dogs had dangerous propensities which could foreseeably cause further injury to others. Furthermore, if there is no place for law enforcement to place vicious dogs after seizure, it is unlikely seizures of such animals would ever occur.

A police jury in the state of Louisiana has a fiduciary duty to manage the affairs of their parish. One of their primary responsibilities is to address issues and concerns in the community — as well as acting effectively and efficiently to resolve public concerns. Taking the allegations in the appellant's petition as true, the BPPJ chose stagnation when these concerns

8

were brought to the body's attention and now attempts to hide behind a cloak of immunity playing semantics with the law.

We believe that the appellant — in his petition — has alleged a cause of action in which a factfinder at the trial court level may allocate a percentage of fault.  There may be some liability on the part of the BPPJ; however, *discovery* is the proper procedure to establish the extent or degree, if any, to which each party is liable to the appellant.  Thus, we find it premature that the trial court released the BPPJ as a defendant in this lawsuit.

### CONCLUSION

The trial court committed manifest error by granting the Bienville Parish Police Jury's exception of no cause of action.  Accordingly, we reverse the trial court's ruling and remand this matter for further proceedings. Costs of this appeal are assessed to the Bienville Parish Police Jury.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**