BROWN, CHIEF JUDGE.
[, EnCana Oil & Gas (“EnCana”) and SWEPI, LP (“Swepi”), the mineral operators, filed a concursus proceeding to resolve a dispute between the lessors, Stewart Group and Harriett Jennette, on one hand and Brammer Engineering, Inc. (“Brammer”), an agent, on the other hand concerning an overriding mineral royalty. The mineral owners and Brammer responded with competing motions for summary judgment. The trial court found in favor of Brammer, granting its motion for summary judgment. We reverse and remand.
Facts
In 1962, several individuals (“mineral owners”) holding interest in the old Mansfield Hardwood Lumber Company hired John S. Callón to act as their agent and attorney-in-fact for their mineral interests. In 1988, the mineral owners entered into a new power of attorney agreement with Callón; this agreement essentially had the same terms as the 1962 Callón POA.
In 2001, Callón resigned as the mineral owners’ agent and attorney-in-fact. Thereafter, Brammer agreed to handle the leasing under the same terms and conditions as Callón.[1] The mineral owners entered into a power of attorney agreement with Brammer (hereinafter referred to as the “Brammer POA”) that adopted the terms for compensation from the 1988 Callón POA.
|2In 2008, John Madison, Jr., and James Robinson Madison (the “Madisons”) of Wiener, Weiss & Madison represented several clients who owned mineral interests in the stated land. The Madisons themselves also owned interests in the land. The Madisons contacted Brammer to see if it wanted to participate in a bid package they were proposing. The Madi-sons told Brammer that due to the discovery of the Haynesville Shale, mineral owners could secure more favorable royalties from oil companies if all of the interested parties participated. Brammer, as agent for the mineral owners, agreed, and subsequently hired Wiener, Weiss & Madison to prepare a bid package, which contained a proposed lease with a 1/4 lessor’s royalty and solicited bids from several oil companies.
After receiving responsive bids, including a bid from EnCana, Brammer’s in-house counsel, Robert Kyle, contacted *998 John Madison and told him that the proposed lease did not provide for the overriding royalty which Brammer claimed to be entitled to under the Brammer POA. At John Madison’s request, Kyle sent him the language Brammer wanted to include in the lease, which was as follows:
As per the recorded powers of attorney and agency agreements in favor of Brammer Engineering, Inc., there is hereby reserved in favor of Brammer Engineering, Inc., from the Lessor’s royalty provided for herein, a free overriding royalty of 1/32 of 8/Sths, which free overriding royalty shall be calculated and delivered in the same manner as the Lessor’s royalty.
Thereafter, Madison advised his secretary to add that language to the lease.[2] Subsequently, Brammer, on June 18, 2008, as agent and attorney-in-fact for the mineral owners, executed a lease with EnCana.
|ROn February 2, 2009, one of the mineral owners, Harriett A. Jennette, executed a document wherein she individually renounced Brammer’s power of attorney. This same document was recorded and filed on February 4, 2009. However, Bram-mer had executed an assignment to itself effective June 18, 2008.
On July 31, 2013, EnCana & Swepi filed their petition for concursus. The trial court ordered that EnCana <& Swepi deposit the disputed amount into the registry of the court.
In their answer, the mineral owners, the Stewart Group and Jennette, argued that they were entitled to the disputed amount and filed a motion for partial summary judgment. The Stewart Group argued that the EnCana Lease, pursuant to the Bram-mer POA, provided that, if Brammer obtained an overriding royalty for the mineral owners, Brammer would share in that overriding royalty. The mineral owners asserted that an overriding royalty is carved out of the working interest, i.e., the lessee’s interest in a lease, never out of a lessor’s royalty. Therefore, since Brammer failed to procure an overriding royalty in favor of the mineral owners in connection with the EnCana Lease, it did not have a right to an interest in oil and gas production attributable to that lease. The mineral owners sought a summary judgment recognizing that they own a 1/4 lessor’s royalty under the EnCana Lease and awarding them all of the revenue which has been deposited into the registry of the court.[3]
14Jennette also filed a motion for partial summary judgment.[4] In addition to joining in the other mineral owners’ motion for summary judgment, Jennette further argued that Brammer purported to execute on her behalf an assignment of an overriding royalty interest to Brammer, stating that the assignment was “effective 18th day of June 2008.”
Brammer also filed a motion for summary judgment. Brammer submitted that the dispute was over the following language contained within the Brammer POA:
*999 It is recognized that mineral leases executed in the future by Agent on behalf of principal will provide for the reservation of an additional free overriding.royalty interest on behalf of the lessors.
Brammer argued that the additional free overriding royalty interest reserved for Brammer was a contractual obligation payable to Brammer from “the total royalty interest reserved in the Mineral Leases.” They claimed that Brammer fulfilled its duties to the mineral owners in a manner more beneficial than required and earned an overriding royalty interest.[5]
The trial court issued its written ruling, finding in favor of Brammer. A judgment followed granting Brammer’s motion for summary judgment, recognizing Bram-mer’s 1/32 overriding royalty interest attributable to the interests of the Stewart Group and Jennette and ordering that the funds in the registry of the Court attributable to that interest to be paid to Bram-mer.
The mineral owners have appealed from this judgment.
| 5Discussion
The compensation provisions of the Brammer POA read as follows:
It is recognized that mineral leases executed in the future by Agent on behalf of Principal will provide for the reservation of an additional free overriding royalty interest on behalf of the lessors. (Emphasis added). It is agreed that in consideration of the services rendered and to be rendered by Agent, shall be entitled to compensation as follows, to wit:
1.On oil, gas and mineral leases under the terms of which not less than 1/16 free overriding royalty is reserved, Agent shall be entitled to a 1/32 free overriding royalty (Emphasis added);
2. On oil, gas and mineral leases under the terms of which less than a l/16th free overriding royalty interest is reserved, Agent shall be entitled to a 50% of the free overriding royalty which is reserved; '
3. On oil, gas and mineral leases, Agent shall be entitled to receive 10% of the cash bonus'received including annual delay rentals.
In the EnCana Lease, the Stewart Group and Jennette were granted a royalty of 1/4 or 25%. Brammer received 10% of the cash bonus which was $636,582,89.
The Brammer POA provides that Bram-mer is compensated in two ways: a 10% cash bonus and an overriding royalty interest, Here, the parties do not dispute that Brammer’s execution of the EnCana Lease entitled it to receive a substantial cash bonus of $636,582.89. Our inquiry focuses on the other form of compensation, the overriding royalty interest.
The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co., 46,153 (La.App. 2 Cir. 3/23/11), 63 So.3d 159, writs denied, 11-1225, 11-1236 (La. 9/23/11), 69 So.3d 1162.
Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. La. C.C. arts. 1983, 2045; Marin v. Exxon Mobil Corp., 09-2368 (La. 10/19/10), 48 So.3d 234. The reasonable intention of the parties to a *1000 contract is to be sought by examining the words of the contract itself, and not assumed. Prejean v. Guillory, 10-0740 (La. 07/02/10), 38 So. 3d 274. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046; Prejean, supra at 279. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Id. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. La. C.C. art. 2046; Amend v. McCabe, 95-0316 (La. 12/1/95), 664 So.2d 1183. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Prejean, supra.
In this case, the Brammer POA is a contract of mandate that authorized Bram-mer to enter into mineral leases on behalf of the lessors, the mineral owners. Pursuant to this POA, Brammer executed the EnCana Lease.
Brammer argues that the Brammer POA provides that if Brammer obtains anything higher than what Brammer asserts, the standard lessor’s royalty of 1/8, then it is an overriding royalty. The mineral owners counter that the Brammer POA provides that Brammer must expressly reserve an 17additional free overriding royalty on their behalf to trigger Brammer’s compensation to an overriding royalty.
Brammer states that the threshold question is what constitutes a 1/16 free overriding royalty reserved to the lessor. Brammer interprets that provision to mean that the agent is entitled to a full 1/32 overriding royalty interest as compensation any time that the agent acquires in favor of the mineral owners at least 1/16 or 6.25% more than the “typical” 1/8 royalty. A 1/8 royalty equals 12.5%. Thus, Bram-mer claims that if it obtained at least 18.75% total royalty for the mineral owners then it will earn a full 1/32 overriding royalty interest.
Unlike the terms “lessor’s royalty” and “mineral royalty,” the Mineral Code does not expressly defines “overriding royalty,” but acknowledges that such an interest exists. See La. R.S. 31:126, 31:171, 31:191. Moreover, the term “overriding royalty” is used to describe a royalty carved out of the working interest created by an oil and gas lease. An overriding royalty is an interest severed out of the working interest or lessee’s share of the oil, free of the expenses of development, operation and production. Its duration is limited to the life of the lease from which it was created. Pinnacle Operating Co. Inc. v. Ettco Enterprises, Inc., 40,367 (La. App. 2d Cir. 10/26/05), 914 So.2d 1144. The lessor’s royalty is distinguished from the overriding royalty. Frey v. Amoco Prod. Co., 603 So. 2d 166 (La. 1992); see also Williams & Meyers, Manual of Oil & Gas Terms (14th ed. 2009) (defining an “overriding royalty” as “[a]n interest in oil and gas produced at the surface, free of the expense of production, and in addition to the usual landowner’s royalty reserved to the lessor in an oil and gas lease”). (Emphasis added). |sThus, it is clear that an overriding royalty is in addition to a lessor’s royalty. This difference is acknowledged in Brammer’s assignment of an overriding royalty from the EnCana Lease:
there is hereby reserved in favor of Brammer Engineering, Inc., from the Lessor’s royalty provided for herein, a *1001 free oveiriding royalty of 1/32 of 8/8ths, which free overriding royalty shall be calculated and delivered in the same manner as the Lessor’s royalty. (Emphasis added).
The Brammer POA provides that “mineral leases executed in the future by [Brammer]... will provide for the reservation of an additional free overriding royalty interest.” (Emphasis added). The use and plain meaning of the word “additional” provides that the following clause, “overriding royalty interest,” is in addition to another form of action, which is the reservation of a lessor’s 1/4 royalty. Moreover, by using the full clause, “additional free overriding royalty interest,” the parties to the Brammer POA made a distinction between a royalty and an “additional free overriding royalty.” The Brammer POA even provides an exact percentage Brammer must reserve to trigger its compensation to an overriding royalty, i.e., not less than a 1/16 of the lessor’s 1/4 royalty must be reserved. We find that the Bram-mer POA is unambiguous in that Brammer had to expressly reserve an additional royalty interest on behalf of the mineral owners to trigger its compensation to an overriding royalty interest.
Brammer’s argument redefines the term “royalty” to mean “standard lessor’s royalty,” whatever that “standard” may be. This would require us to look beyond the words of the contract. For instance, the Brammer POA was signed in 2001, but the EnCana Lease was not executed until 2008. Thus, |9the “standard lessor’s royalty” may have changed during these intervening years, which is exactly what the mineral owners assert.
Further, in 2001, a 1/8 royalty might have been the standard but by 2008 in the Haynesville Shale a 1/4 royalty was offered at the outset. In this case, the bid package prepared by Wiener, Weiss & Madison contained a 1/4 royalty requirement. Brammer did nothing to obtain this royalty-
Accordingly, we conclude that the trial court erred in granting Brammer’s motion for summary judgment.[6]
Conclusion
The judgment of the trial court is REVERSED and the matter is REMANDED. Costs of this appeal are assessed against Brammer.
REVERSED AND REMANDED.
Before BROWN, WILLIAMS, DREW, LOLLEY, and STONE, JJ.
Rehearing denied.

. Brammer is an exploration and production company that specializes in outsourcing exploration and production personnel resources to exploration and production companies.

. In deposition, Madison testified that he did not review the provision before advising his secretary to add it to the lease.

. In support of their motion, the mineral owners submitted the following documents: the 1988 Callón POA, a letter from Brammer to the mineral owners showing Brammer’s representation of the mineral owners under the same terms as the 1988 Callón POA, the Brammer POA, the affidavit of John Madison, Jr., and the EnCana Lease.

.In support, Jennette submitted the partial deposition of the land manager of Brammer, Randall J. Beau, her renunciation of Bram-mer, and Brammer’s assignment of an overriding royalty from the EnCana Lease.

. In support, Brammer submitted numerous documents, including the affidavit of Bram-mer’s general counsel at the time of execution of the EnCana Lease, Robert M. Kyle, the 1962 Callón POA, and leases executed by Cal-lón and Brammer on behalf of the mineral owners.

. Because we have reached this conclusion, we pretermit a discussion of the other assignments of error.