Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,461-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHARLES T. CRUMP                                    Plaintiff-Appellee

versus

JPP DEVELOPMENT                                    Defendants-Appellants
HAYNESVILLE, LLC, KIMBLE
DEVELOPMENT, LLC, MICHAEL
KIMBLE, AND JACQUES
POIRIER

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 43101

Honorable Charles Glenn Fallin, Judge

* * * * *

KEEGAN, JUBAN, LOWE,                               Counsel for Appellants
AND ROBICHAUX, LLC
By: David Allen Lowe

COLVIN SMITH MCKAY & BAYS                          Counsel for Appellee
By: James Henry Colvin, Jr.

* * * * *

Before STONE, THOMPSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This civil appeal arises from the Second Judicial District Court, Parish of Claiborne, the Honorable Glenn Fallin presiding. Defendants appeal the granting of plaintiff's motion for summary judgment enforcing an agreement to purchase immovable property and awarding plaintiff attorney fees and costs. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On December 7, 2023, plaintiff Charles T. Crump ("Crump") filed a petition seeking specific performance of an "Agreement to Purchase" (the "Agreement") immovable property he owned, which was located at 9760 Highway 79, Haynesville, Louisiana. Crump named as defendants 1) Kimble Development, LLC ("KD"); 2) Michael Kimble ("Kimble"), a member of KD; 3) JPP Development Haynesville, LLC ("JPP"); and 4) Jacques Poirer ("Poirer"), a member of JPP. Crump stated that on July 20, 2022, he executed the Agreement, consenting to sell the Hwy 79 property to Kimble, individually, and/or KD, for $185,000, the closing of which was to occur by February 15, 2023. Crump averred that on February 22, 2023, JPP and Poirer, in his individual capacity, accepted Kimble's assignment of the Agreement in a document styled "Assignment of Contract for Purchase of Real Estate" (the "Assignment").

Crump said he mailed defendants letters requesting specific performance; defendants did not respond. Crump filed his petition seeking specific performance, damages, attorney fees, and judicial interest. Crump

attached to his petition 1) the Agreement; 2) the Assignment; and 3) the demand letters.

The Agreement listed Crump as the "Seller" and KD as the "Purchaser." Kimble executed the document on June 6, 2022; the language below the signatory line where he signed as "Mike Kimble" stated, "Entity or Individual." Crump executed the Agreement on July 20, 2022. The closing date was listed as February 15, 2023. The Agreement included the following relevant language (verbatim):

> I/We offer to purchase the following properties located: 9760 Highway 79, Haynesville, LA 71038…. It is understood by Purchaser that Seller makes no warranty respecting the soil or sub-soil conditions of the property conveyed, or its suitability for construction, the warranty referred to herein being restricted solely to marketability of title.
>
> ….
> I/We offer and agree to purchase the property described above for the sum of [$185,000.]
>
> For a period of Sixty (60) days…from the date of final execution by both parties, Seller hereby agrees to allow the Purchaser to enter the subject property and make inspections desired for Purchaser's intended use. Seller hereby agrees to comply with all reasonable requests for information required to complete such tests and inspections (including but not limited to zoning, wetlands, drainage, Phase I environmental, etc.)…. If Purchaser is unable to complete these tests or deems the property unacceptable for the intended use for any reason, the Purchaser, in Purchaser's sole discretion, may declare this Agreement null and void and demand the return by Escrow Agent of the Deposit to Purchaser within five (5) days of such demand.
>
> ….
> Purchaser may assign this contract to a related entity or an entity to be formed prior to closing, provided that neither Purchaser nor Seller shall be relieved from any obligation of this contract.
>
> Time is of the essence in this contract. In the event of default by either party, the non-defaulting party shall have the right to demand and sue for specific performance and/or damages. The

defaulting party under this contract shall also be liable for the Broker's fees and all attorneys' fees and other costs incurred in the enforcement of any and all rights under this contract.

….

The effective date of this contract shall be upon execution/signature by both Purchaser and Seller.

The Assignment, executed in February 2023, stated in pertinent part:

For value received, I, Mike Kimble, as assignor, hereby transfer and assign to Jacques Poirer/JPP Development, Haynesville, LLC, as assignee…all rights and interest in that contract between Charles Crump, seller, and assignor Mike Kimble/Kimble Development, as purchaser dated the 20th day of July 2022, for the sale of premises 9760 Highway 79 Haynesville, LA 71201 [*sic*] more particularly described in said contract, subject to the covenants, conditions, and payments contained in said contract.

The language under Kimble's signatory line said "Purchaser/Assignor." Kimble signed only his first and last name. The Assignment included an "Acceptance by Assignee" section followed by the signatory line which stated that the above signer was the "Assignee." Poirer signed as "Jacques Poirer." The Assignee section stated, "I, Jacques Poirer/JPP Development, Haynesville, LLC, accept the above assignment of that contract…." The "Consent by Seller" section where Crump signed, stated, "I, Charles Crump, the seller named in the contract herein assigned consent to this assignment to Jacques Poirer/JPP Development, assignee."

On May 1, 2024, Crump filed a motion for summary judgment stating that defendants failed to purchase the Hwy 79 property by February 15, 2023, and they offered no "contractually relevant explanation as to why." He reasoned that the Agreement was a standard real estate purchase agreement and collectively bound defendants to purchase the Hwy 79 property for $185,000. Crump said that defendants refused to do so despite

their agreement, and, by the terms of the contract, he was entitled to specific performance of the contract, attorney fees, costs, and brokerage fees. He asked for the trial court to grant his motion and 1) compel defendants to purchase the property, or alternatively, pay $185,000 in damages with legal interest; and 2) enter judgment against defendants to recover attorney fees of $8,025, a brokerage fee of $9,250, damages, and costs.

Crump attached to his motion for summary judgment his affidavit in which he said that the Agreement stated that he consented to sell to Kimble and KD immovable property in Haynesville, Louisiana for $185,000. Crump also averred that Poirer and JPP accepted an assignment of the obligation from Kimble and KD for the Haynesville property. He said he incurred attorney fees and court costs through the filing of his motion. Crump's counsel also executed an affidavit stating that Crump incurred attorney fees in litigating the matter.

Defendants opposed Crump's motion, arguing that Kimble was not a party to the Agreement or the Assignment in his personal capacity and that Poirer did not execute the Agreement and was not a party to the Assignment in his personal capacity. They argued that KD and JPP were not in default of the Agreement because it was null and void. Defendants said that JPP was organized by Poirer (as the sole member) on August 29, 2022, for the purpose of developing and constructing a Family Dollar or Dollar Tree store in Haynesville. Defendants pointed out that the Agreement stated that the purchaser could assign it only "to a related entity or an entity to be formed prior to closing," and Poirer was not an "entity."

4

Defendants also stated that the Agreement allowed them to declare it null and void if the purchaser "deems the property unacceptable for the intended use for any reason." Defendants said that after executing the Agreement and the Assignment, KD and JPP determined that the property was not acceptable for its intended use as a Family Dollar or Dollar Tree store due to changes in the marketplace including an increase in interest rates, capitalization rates, and the cost of goods and services. Defendants claimed that they advised plaintiff that the Hwy 79 property was not fit for its intended use due to the current economic conditions, making the Agreement null. Defendants said that the parties executed an "Extension of Closing" (the "Extension") in which Crump and JPP extended the closing date to March 30, 2023.

Defendants attached to their opposition:

1) Poirer's affidavit stating that he organized JPP to develop a Family Dollar or Dollar Tree store in Haynesville. He averred that neither he nor JPP were a party to the Agreement and that he signed the Assignment on behalf of JPP, but not in his personal capacity. He stated that changes in the marketplace rendered the Haynesville property unacceptable for its intended use.

2) JPP's organizing documents.

3) The Extension listed the "Seller" as Crump and the "Buyer" as JPP. The buyer's signatory line was signed "Jacques Poirer." The document extended the closing date to March 30, 2023.

4) Kimble's affidavit stating that he was one of two organizers of BDMK, LLC, which was the sole member of KD. KD sought to develop and construct a Family Dollar or Dollar Tree store in Haynesville. KD entered into the Agreement to purchase the Hwy 79 property from Crump, and Kimble signed the Agreement on behalf of KD. Kimble said that, due to market conditions, KD determined that developing a store on the property would no longer be profitable. He stated that

5

the Agreement allowed KD to assign it to a "related entity," so he assigned it to JPP. Kimble stated that at no time did he sign any of the related documents in his individual capacity.

Crump replied and said that the opening paragraph of the Agreement stated, "I/We offer to purchase," meaning Kimble, individually, and KD. Crump argued that in the signature portion of the Agreement, Kimble signed as "Entity or Individual," making both the person and the entity the purchaser. Crump pointed out that the Assignment stated that "Mike Kimble," as opposed to KD, assigned the Agreement to Poirer and JPP. Crump maintained that Kimble entered into the Agreement in his individual capacity because otherwise, his individual assignment of his rights and obligations in the Agreement would have had no meaning. Crump noted that the Assignment listed Poirer and JPP as assignees, meaning the parties contemplated and agreed to Poirer being personally responsible to perform under the Agreement. Crump contended that, in the Assignment, he consented and acknowledged that the Agreement was assigned to Poirer and JPP.

Crump alleged that defendants were improperly interpreting the Agreement regarding their ability to nullify it. Crump said that the Agreement stated that the warranty referred to in the contract was restricted to the marketability of title. He argued that defendants failed to allege any defect in the marketability of the property's title which rendered it unacceptable or unfit for its intended use as a retail establishment. He contended that interest rates had no effect on whether the property was fit for its intended use, and the language in the Agreement about defendants' ability to nullify it was envisioned to provide the purchasers with the ability

to void the Agreement if their testing revealed title, zoning, wetlands, or environmental issues with the property, which defendants did not allege. Crump argued that the Agreement did not contemplate the purchasers being able to terminate it based upon interest rates that affected neither the marketability of title nor the property's fitness for its intended use as a retail store.

On September 30, 2024, a hearing was held on the motion for summary judgment. When the trial court questioned the parties about who drew up the Agreement and the Assignment, counsel for defendants guessed that it was prepared by a broker retained by KD. The court questioned why the Agreement did not state that it could be voided if interest rates became unfavorable or economic conditions changed. The court found that there were no genuine issues of material fact and granted plaintiff's motion for summary judgment. The court also said that the Agreement was enforceable against KD and JPP and against Kimble and Poirer in their individual capacities. The court awarded attorney fees.

On October 15, 2024, the trial court signed a judgment granting plaintiff's motion for summary judgment and ordering Poirer, JPP, Kimble, and KD, *in solido*, to pay Crump $185,000 with judicial interest to acquire the Hwy 79 property. The court also ordered defendants to pay attorney fees of $8,025 with legal interest and costs. Defendants now appeal.

## DISCUSSION

In defendants' first and fourth assignments of error, they state that the trial court erred in concluding that the purchaser could not declare the Agreement null and void when the property to be purchased was

7

unacceptable for its intended use as a Family Dollar or Dollar Tree store.

Defendants argue that the Agreement was properly terminated, and it

afforded the purchaser the absolute right to declare it null if the property was

"unacceptable for the intended use for any reason," which included market

conditions. They maintain that the "for any reason" language set no limits

on their right to terminate the Agreement if the property was unacceptable

for its intended use. Defendants state that genuine issues of material fact

remain about whether the purchaser could declare the Agreement null.

*Motion for Summary Judgment*

A motion for summary judgment is a procedural device used when

there is no genuine issue of material fact for all or part of the relief prayed

for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880;

*Rugg v. Horseshoe Entm't*, 55,239 (La. App. 2 Cir. 1/10/24) 378 So. 3d 323,

*writ denied*, 24-00181 (La. 4/3/24), 382 So. 3d 108. Summary judgment

procedure is designed to secure the just, speedy, and inexpensive

determination of every action, except those disallowed by statute. The

procedure is favored and shall be construed to accomplish those ends. *Id*.

Appellate courts review motions for summary judgment *de novo*,

using the same criteria that govern the trial court's consideration of whether

summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First

Guar. Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Rugg v. Horseshoe

Ent., supra*.

A motion for summary judgment shall be granted if the motion,

memorandum, and supporting documents show there is no genuine issue as

to material fact and the mover is entitled to judgment as a matter of law. La.

8

C.C.P. art. 966(A)(3). A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only considering the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So. 3d 876; *Rugg v. Horseshoe Entm't, supra*.

On a motion for summary judgment, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.

*Construal of a Contract*

The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. *Encana Oil & Gas (USA) Inc. v. Brammer Eng'g, Inc.*, 51,045 (La. App. 2 Cir. 11/16/16), 209 So. 3d 995, *writ denied*, 17-00242 (La. 3/31/17), 217 So. 3d 361.

Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. La. C.C. arts. 1983, 2045. The reasonable intention of the parties to a contract is

9

to be sought by examining the words of the contract itself and not assumed. *Prejean v. Guillory*, 10-0740 (La. 7/2/10), 38 So. 3d 274; *Encana Oil & Gas (USA) Inc. v. Brammer Eng'g, Inc.*, *supra*. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; *Prejean v. Guillory*, *supra*; *Encana Oil & Gas (USA) Inc. v. Brammer Eng'g, Inc.*, *supra*.

Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *Id.* However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. La. C.C. art. 2046; *Amend v. McCabe*, 95-0316 (La. 12/1/95), 664 So. 2d 1183. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract and their common and usual significance. *Prejean v. Guillory*, *supra*.

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Under Louisiana law, a contract provision is not ambiguous where only one of two competing interpretations is reasonable. *In re Supernatural Foods, LLC*, 268 B.R. 759 (Bankr. M.D. La. 2001). Also, the fact that one party creates a dispute about the meaning of a contractual provision does not render the provision ambiguous. *Springbok*

*Royalty Partners, LLC v. Woolley*, 55,953 (La. App. 2 Cir. 11/20/24), 401 So. 3d 952, *writ denied*, 24-01540 (La. 2/28/25), 402 So. 3d 487. "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties' intent." *Id*. at p. 14, 401 So. 3d at 961.

When reading the Agreement as a whole, we find that the purchaser could only void the sale if there were problems with the property itself, such as environmental factors, suitability for construction, or zoning and title issues. The Agreement is silent about market conditions or interest rates.

The first time "intended use" appears in the Agreement is in the paragraph detailing the purchaser's ability to enter the property to "make inspections for Purchaser's intended use." The inspections are detailed in the following sentence in the parenthetical, which states, "including but not limited to zoning, wetlands, drainage, Phase I environmental, etc." The second time "intended use" appears in the Agreement refers to the sentence containing the clause at issue:

> If Purchaser is unable to complete these tests or deems the property unacceptable for the intended use for any reason, the purchaser, in purchaser's sole discretion, may declare the agreement null and void and demand the return of by Escrow Agent of the Deposit to Purchaser within five (5) days of such a demand.

We cannot read the second use of the term "intended use" without considering the first time it was used in the Agreement. The Agreement specifies solely defects in the property when it first uses the term "intended use," but defendants want us to read additional meanings for that term into

11

that document which it does not contemplate. The property was the subject of the Agreement. The property did not change, only defendants' business considerations did. Finding otherwise produces an absurd, unreasonable, and inequitable result where the defendants could void the deal for any purpose, effectively binding Crump but not themselves. We echo the trial court's question regarding defendants' interpretation of the disputed clause, "Why even have a contract?"

We further point out that a Family Dollar/Dollar Tree Store was not mentioned in the Agreement, and Crump states, and defendants do not deny, that they did not provide him with written notice of their desire to void the sale or ask for the return of the deposit. We find that the Agreement is valid and enforceable, and we affirm the part of the trial court's judgment which orders KD and JPP, *in solido*, to pay Crump the purchase price, attorney fees, and costs.

*Whether Kimble and Poirer Signed the Documents in their Personal Capacities*

In their second, third, and fifth assignments of error, defendants claim that the trial court erred in concluding that Michael Kimble executed the Agreement and the Assignment in his individual capacity rather than solely as a representative of KD and that Jacques Poirer executed the Assignment in his individual capacity rather than solely as a representative of JPP.

We agree that genuine issues of material fact remain about whether Kimble and Poirer signed the Agreement, Assignment, and Extension in their individual capacities. The Agreement stated, "I/We" throughout when referencing the purchaser. But there are no plural forms of the terms

12

"purchaser," "assignor," "assignee," etc. used in the relevant documents And in the Agreement, above the signatory line, the "Purchaser" was listed as KD. In contrast, under the signatory line for the purchaser it stated, "Entity or Individual." Kimble signed his first and last name on the signatory line but did not write "Mike Kimble o/b/o Kimble Development, LLC," "Kimble Development, LLC through its agent Mike Kimble," etc.

Furthermore, the Assignment stated, "I, Mike Kimble, as assignor, hereby transfer…," but later said the assignor was "Mike Kimble/[KD]." The language under the signatory line in the Assignment stated "Purchaser/Assignor." Kimble signed his first and last name on that line without stating that it was on behalf of KD or that he was an agent of KD. In his affidavit, Kimble asserted that he signed that document only as an agent of KD. Crump, in his affidavit, said that the Agreement stated that he agreed to sell the property to Kimble and KD.

The Assignment specified that the purchaser was transferring his and/or its interest in the Agreement to "Jacques Poirer/JPP Development, Haynesville, LLC, as assignee." The "Acceptance by Assignee" section stated, "I, Jacques Poirer/JPP Development, Haynesville, LLC, accept the above assignment," but the language under the signatory line said "Assignee." Poirer signed his first and last name on that line, but did not state that he signed on behalf of JPP or that he was an agent of JPP.

Lastly, the Extension listed the buyer as JPP, but under the signatory line was the typewritten name "Jacques Poirer." Poirer signed his first and last name on the signatory line. He did not write, "Jacques Poirer o/b/o JPP

13

Development, Haynesville, LLC," "JPP Development, Haynesville, LLC through its agent Jacques Poirer," or something similar. In his affidavit, Poirer said he executed the Assignment and the Extension on behalf of JPP and not in his individual capacity. Crump, in his affidavit, said Poirer signed both documents in his personal capacity and as an agent of JPP.

Those facts create confusion about the intent of the parties and their understanding of who was bound by the executed documents. The language that appeared under the signatory lines appears to conflict with who is described in the documents as "purchaser," "assignor," and "assignee." It is unclear by Kimble's and Poirer's signatures whether they signed in their individual capacities or as agents of their respective entities. Likewise, the affidavits filed in support and opposition conflict. Therefore, we find that there remain genuine issues of material fact about whether Kimble and Poirer signed the documents at issue in their personal capacities. We reverse that part of the trial court's ruling and remand for further proceedings to resolve the issue.

## CONCLUSION

For the foregoing reasons, the part of the trial court's ruling ordering JPP Development Haynesville, LLC and Kimble Development, LLC, *in solido*, to pay plaintiff Charles T. Crump the sum of $185,000 plus judicial interest to acquire the property as issue, $8,025 in attorney fees with legal interest, and court costs is affirmed. The part of the trial court's ruling determining that defendants Michael Kimble and Jacques Poirer were personally liable, *in solido*, to plaintiff for the sum of $185,000 with judicial interest, attorney fees in the amount of $8,025 with legal interest, and court

costs is reversed.  The case is remanded for further proceedings consistent

with this opinion.  The costs of the appeal are assessed equally to appellants

and appellee.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**