Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,620-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ARDAMAN & ASSOCIATES, INC.                Plaintiff-Appellee

versus

FRENCH ENGINEERING, INC.          Defendants
AND COOTERVILLE SAND &
GRAVEL, LLC

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 645,951

Honorable Ramon Lafitte, Judge

* * * * *

HARGROVE, SMELLEY & STRICKLAND          Counsel for Appellant,
A Professional Law Corporation          French Engineering, Inc.
By: Parker W. Maxwell

SALLEY, HITE, MERCER & RESOR, LLC          Counsel for Appellee
By: Kevin M. Melchi

* * * * *

Before STONE, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Ramon Lafitte presiding. Defendant French Engineering, Inc. ("French") appeals the trial court's granting of plaintiff's motion for partial summary judgment, finding that it breached its contract with plaintiff. The court ordered defendant to pay $87,500, 12 percent interest for two invoices, attorney fees, and costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On September 5, 2023, Ardaman and Associates, Inc. ("Ardaman") filed a petition for breach of contract and open account. Ardaman named as defendants French and Cooterville Sand & Gravel, LLC ("CSG"). Ardaman stated that on June 24, 2022, it submitted a proposal to defendants to provide professional geotechnical engineering services for a new frac sand plant facility in Atkins, Louisiana, in exchange for payment. Ardaman said that French, "either on behalf of itself, CSG, or both," accepted and signed the proposal, and it said it would pay Ardaman $87,500 for its services.

Ardaman claimed that it furnished professional geotechnical engineering services to defendants and sent them two invoices, one for $80,000, dated September 26, 2022, and another for $7,500, dated November 21, 2022; both required payment within 30 days from the dates listed. Ardaman asserted that defendants refused to pay. Ardaman alleged breach of contract and sought damages, interest, attorney fees, and costs.

French answered the petition, denied all claims, and filed a reconventional demand.[1] Ardaman answered the reconventional demand and denied French's claims.

On August 29, 2024, Ardaman filed a motion for partial summary judgment. Ardaman claimed that it performed under its contract with French and submitted invoices to French, which the company refused to pay. Ardaman said that the contract did not require it to determine the suitability of the soil for use as frac sand. Ardaman sought damages in the amount of $87,500, 18 percent interest (per the contract), attorney fees, and costs. Ardaman attached to its motion for partial summary judgment:

> 1) An affidavit executed by Robert Rousset ("Rousset"), the branch manager for Ardaman's New Orleans and Shreveport offices. He stated that there was a contract between Ardaman and French for geotechnical engineering services, that Ardaman performed its work under the contract and provided French with a report, and that French refused to pay the $87,500 fee provided in the contract. Rousset stated that French did not request information about the soil samples' suitability for use as frac sand in the contract and did not do so until the contract was executed and Ardaman's work was complete. Rousset stated that frac sand analysis was not a form of testing furnished by Ardaman.

> 2) The contract, executed on August 22, 2022, by Enoch French ("Joey"), French's authorized representative and owner, which stated in part:

>> 1.0 Project Description and Scope:

>> It is understood that a new Frac Sand Facility is being considered for construction on the left descending bank of the Red River, in Atkins, LA. At this time, it has been requested that Ardaman perform marine borings to determine sand depths in the Red River in the vicinity of the new proposed Frac Sand Facility.
>> ….

>> 2.2 Laboratory Testing

---

[1] French's reconventional demand is not a subject of this appeal.

Geotechnical laboratory testing will be performed on selected samples collected during the performance of the soil boring. All geotechnical tests are performed in general accordance with the applicable ASTM Standards

In general, the program will consist of the following tests for the sand investigation phase of work:

Grain Size Analyses (2" through 200 Sieve; ASTM C136) performed on every sample and estimate a total of 250 samples)
….

2.3 Geotechnical Engineering

Following the collection of the field and laboratory data, a geotechnical engineer will perform the evaluations necessary to characterize the subsoil conditions of the site and develop [a] report inclusive of the following:

- Soil boring logs containing visual descriptions and sand contents,

- Grain size analyses curves,

- Fence plots of the soil boring results,

- Soil boring location plan,

- General discussion on sand investigation results.

The contract said that French would pay Ardaman a fee of $87,500 for its work, payment was due 30 days from the date of the invoices, and interest accrued on any unpaid amount at the rate of 18 percent per year. It also stated that French would pay all attorney fees and expenses associated with the collection of past due invoices.

3) The two invoices.

4) Joey's deposition testimony, in which he said that Ardaman's role was to supply a document that set forth whether the mined material was acceptable for use as frac sand, which it did not do. When asked if he could indicate in the contract where it required Ardaman to determine the suitability of the soil sampled for use as frac sand, Joey said he could not.

5) An email from John French ("John"), Joey's partner on the project, to Rousset, dated December 1, 2022, which stated:

> Thank you for the Data Report for the New Frac Sand Facility project. As per your Proposal…there should also be a section in the report for the General discussion on sand investigation results, findings with conclusions, and recommendations.
>
> The information in this section should reference the appropriate API/ISO standards for Frac Sand…. We were anticipating at least the following information, particle shape, gradation classification, crush strength of the particle and if the material meets the requirements of the specification.

French opposed plaintiff's motion arguing that Ardaman's report lacked the requisite information necessary to conclude whether the sand in the vicinity of the proposed sand plant could be used as frac sand, which was the sole reason Ardaman was hired. French said that Ardaman attempted to provide services outside an area of its competence, and that it should have known it could not have delivered the conclusions requested of it by French. French pointed out that John, at his deposition, testified that Rousset claimed that Ardaman could perform a frac sand analysis. French argued that Ardaman held itself out as an authority on frac sand, but, in fact, it was not, violating La. Admin. Code tit. 46, part LXI, § 2505(A) and (B).[2]

French said that John testified at deposition that he believed the contract's language said that Ardaman would include in its report a "general discussion on sand investigation results," obligating the engineering firm to

---

[2] La. Admin. Code tit. 46, part LXI, § 2505 states, in part:

> A. Licensees shall perform services only in the area of their competence.
>
> B. Licensees shall undertake assignments only when qualified by education or experience in the specific technical fields of engineering or land surveying involved.

determine whether the sand in the vicinity of the proposed plant could be used as frac sand. Joey provided similar testimony. French concluded that Ardaman breached the contract, and it said that it was forced to retain the services of another engineering firm to provide it with the information about frac sand at the Atkins site.

French attached the same documents to its opposition as plaintiff did to its motion for partial summary judgment, but French added the following documents in support: 1) Joey's affidavit; 2) Ardaman's data report, dated November 16, 2022, analyzing the sand at the Atkins' site; 3) French's answer and reconventional demand; 4) a data report prepared by a third party, which provided a sand analysis; 5) John's affidavit and deposition testimony; and 6) emails discussing the proposal/contract details and payment.

Ardaman replied to defendant's opposition and noted that French did not dispute the amount owed under the contract. Ardaman said that it complied with the contract as the document did not require the firm to provide analysis of frac sand, indicating the following deposition testimony from John:

> Q:     But as we just saw in the contract, the proposal from
>        Ardaman says the sand depths will be determined, the
>        grain size analyses, the grain size will be determined, but
>        nothing about the actual suitability for frac sand.
>
> A:     Well, to me it was implied.

Ardaman also indicated that John agreed that the proposal did not contain industry specifications or standards for frac sand. When asked if he remembered discussing the specifics about frac sand analysis with Rousset prior to the signing of the contract, John said, "Not specific, just general

sand analysis for a frac sand plant." John said he did not have a discussion with Rousset about crush strength, acid solubility, or sieve analysis, which were the main aspects of frac sand suitability. Ardaman contended that French could have included a frac sand analysis obligation in the contract but did not.

At the hearing on the motion for partial summary judgment, the court pointed out that the contract did not contain any language about determining the suitability of the sand for use as frac sand and that John and Joey agreed that it did not contain such language. The court said that an implication was not enough and that the language had to be found within the four corners of the contract. The trial court granted Ardaman's motion.

On November 19, 2024, the trial court signed a judgment 1) granting Ardaman's motion for partial summary judgment; 2) ordering French to pay Ardaman $87,500; 3) ordering French to pay 12 percent annual interest on both invoices;[3] and 5) ordering French to pay attorney fees and costs, to be determined at a separate hearing. On January 10, 2025, the trial court certified its November 19, 2024, judgment as final and appealable pursuant to La. C.C.P. art. 1915(B). French now appeals.

## DISCUSSION

In its first, second, and third assignments of error, French claims that the trial court erred in finding that no genuine issues of material fact remained because the contract was ambiguous and Ardaman did not fully perform pursuant to the contract. French argues that the term "general

---

[3] The record is silent about why the trial court ordered 12 percent annual interest instead of the 18 percent specified in the contract.

6

discussion on sand investigation results" is a technical term and this court should read the contract to require the engineer's conclusion on the suitability of the sand analyzed for use as frac sand. It cites La. C.C. art. 2053, maintaining that doubtful provisions in a contract must be interpreted considering the equity, usages, and conduct of the parties. French states that reasonable engineers could differ on the meaning of the clause at issue, so ambiguity exists in the contract. French contends that Ardaman never supplemented its report to provide analysis about frac sand; therefore, it did not fully perform as provided by the contract. French asks this court to reverse the trial court's judgment.

*Motion for Summary Judgment*

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Rugg v. Horseshoe Ent.*, 55,239 (La. App. 2 Cir. 1/10/24) 378 So. 3d 323, *writ denied*, 24-00181 (La. 4/3/24), 382 So. 3d 108. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by statute. *Id*. The procedure is favored and shall be construed to accomplish those ends. *Id*.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guar. Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Rugg v. Horseshoe Ent.*, *supra*.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So. 3d 876. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only considering the substantive law applicable to the case. *Id*.; *Rugg v. Horseshoe Ent*., *supra*.

On a motion for summary judgment, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id*. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.

*Contract Interpretation*

The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. *Amber, LLC v. Welsh Oil Co., Inc.*, 53,871 (La. App. 2 Cir. 4/14/21), 319 So. 3d 427. Contracts have the effect of law for the parties and the interpretation of a contract is the

8

determination of the common intent of the parties. La. C.C. arts. 1983, 2045. The reasonable intent of the parties to a contract is to be sought by examining the words of the contract itself and is not assumed. *Pierre v. Gardner*, 53,715 (La. App. 2 Cir. 1/13/21), 311 So. 3d 574.

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; *Prejean v. Guillory*, 10-0740 (La. 7/2/10), 38 So. 3d 274. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *Bonilla v. Verges Rome Architects*, 23-00928 (La. 3/22/24), 382 So. 3d 62.

However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. La. C.C. art. 2046; *Amend v. McCabe*, 95-0316 (La. 12/1/95), 664 So. 2d 1183; *Martin v. Martin*, 52,401 (La. App. 2 Cir. 11/14/18), 261 So. 3d 984. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract and their common and usual significance. *Prejean v. Guillory*, *supra*.

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Under Louisiana law, a contract provision is not ambiguous where only one of two competing interpretations is reasonable. *In re Supernatural Foods, LLC*, 268 B.R. 759 (Bankr. M.D. La. 2001).

9

Also, the fact that one party creates a dispute about the meaning of a contractual provision does not render the provision ambiguous. *Springbok Royalty Partners, LLC v. Woolley*, 55,953 (La. App. 2 Cir. 11/20/24), 401 So. 3d 952, *writ denied*, 24-01540 (La. 2/28/25), 402 So. 3d 487. "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id*. at p. 14, 401 So. 3d at 961.

The essential elements of a breach-of-contract claim are 1) the obligor undertook an obligation to perform, 2) the obligor failed to perform the obligation, and 3) the failure to perform resulted in damages to the obligee. *Highland Clinic v. Dhawan*, 55,240 (La. App. 2 Cir. 9/27/23), 372 So. 3d 390.

The contract between French and Ardaman stated that the scope of the project was to "perform marine borings to determine sand depths in the Red River in the vicinity of the new proposed Frac Sand plant." The contract did not state what the planned use for the sand was, and the contract expressing that a frac sand plant was to be built at the location of Ardaman's work for French did not write into the contract a frac sand analysis requirement. Sand has multiple industrial uses. It was not Ardaman's task to determine what French sought to do with the sand it wanted analyzed. It was French that was obliged to clearly state in the contract what it required of Ardaman.

French's argument expects the words "general discussion on sand investigation results" to operate as a catchall phrase which included its request for a frac sand analysis. However, the meaning of that phrase

10

conflicts with the information on "particle shape, gradation classification, crush strength of the particle, and if the material meets the requirements of the specification" that John requested of Ardaman in his December 1, 2022, email to Rousset. French would have this court believe that the words "general discussion on sand investigation results" has a technical meaning. We disagree. The term "general" as used in that phrase means "miscellaneous; considering or dealing with broad or important aspects, elements, etc.; not specific." *Random House Webster's College Dictionary* 545 (2d ed. 2000). In contrast, the term "specification," relevant to this case, means "a detailed description of requirements, dimensions, materials, etc." *Id*. at 1260.

The specifications about frac sand that French requested after Ardaman performed cannot, by definition, fall under the umbrella of a "general discussion on sand investigation results," when the word "general" means "not specific." "Particle shape," "gradation classification," "crush strength," "acid solubility," and "sieve analysis" are specific terms. The phrase "general discussion on sand investigation results," as used in the contract, does not include those specifications.

Furthermore, the contract provided information about the specifications Ardaman would deliver about the sand it evaluated, stating that the analysis would include "Grain Size Analyses (2" through 200 Sieve; ASTM C136 performed on every sample and estimate a total of 250 samples)." French's argument that the language "general discussion of sand investigation results" operated as a comprehensive phrase does not make sense when reading the entire contract, because, under French's reasoning,

11

the contract was precise about describing the grain size analysis Ardaman would supply but not about the specifications for frac sand. To read the contract as containing a frac sand analysis requirement would lead to absurd consequences. Under French's interpretation, the phrase "general discussion of sand investigation results" could be used to include every possible type of analysis that could be performed on sand.

We also echo the trial court's comment that an implication is not sufficient to find that the contract included the requirement that Ardaman perform a frac sand analysis. The four corners of the contract do not contain provisions about frac sand. John and Joey also agreed that the contract did not contain precise language about frac sand analysis. Reading the contract in its entirety, we find that it is not ambiguous; Ardaman was not required to perform a frac sand analysis.

Ardaman and French undertook obligations to perform under the contract. Ardaman performed as expected under the contract. French did not. It was obligated to pay Ardaman a fee of $87,500, and its failure to do so caused Ardaman to suffer damages and left French in breach of contract. Therefore, French's first, second, and third assignments of error are without merit.

*Fourth and Fifth Assignments of Error*

In its fourth assignment of error, French claims the trial court improperly shifted the burden of proof. It claims that Ardaman failed to carry its burden under La. C.C.P. art. 966 because it relied only on the contract's text and unpaid invoices, ignoring affidavit and documentary evidence that it never performed frac sand testing. In its final assignment of

12

error, French contends that Ardaman's lack of professional competence is a triable issue because Ardaman accepted a contract requiring frac sand analysis that it admitted it could not perform.

Because we find that Ardaman was not required to perform a frac sand analysis, French's last two assignments of error are moot.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. The costs of the appeal are assessed to appellant.

**AFFIRMED.**